**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lem HUGHES, Defendant–Appellant.**

No. 89–1794.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 15, 1990.

Decided Jan. 30, 1991.

---

Kenneth R. Chadwell, Jr. (argued), Office of the U.S. Attorney, Detroit, Mich., for plaintiff-appellee.

Rod O'Farrell (argued), Saginaw, Mich., for defendant-appellant.

Before KEITH and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.

KEITH, Circuit Judge.

Defendant Lem Hughes, Jr. ("Hughes") appeals from the June 30, 1989, judgment of conviction and sentence entered pursuant to his guilty plea to conspiring to possess with intent to distribute and to distribute five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846. For the reasons set forth below, we AFFIRM.

### I.

### A.

On March 4, 1988, Saginaw police officers executed a search warrant at Hughes' 2207 Whittier Street residence. During the search, the police discovered a weighing scale, a heat sealer, razor blades and cocaine residue. Hughes was arrested and charged with possession with intent to deliver cocaine, a felony violation of Mich. Comp.Laws § 333.7401. In June 1988, Hughes pled guilty to possession of cocaine, a lesser felony violation of Mich. Comp.Laws § 333.7403. Hughes was sentenced to pay a $1,000 fine on September 2, 1988. Hughes did not appeal his state drug conviction or sentence.

On December 2, 1988, the Drug Enforcement Administration ("DEA") office in Saginaw, Michigan, received a telephone call from an employee of a local United Parcel Service ("UPS") office. The UPS employee indicated that a "next day air" package had been received for delivery in the Saginaw locale, but the address on the package was incorrect, thereby hindering delivery. In accordance with company policy, the package had been opened to see if a complete address could be found inside. When the package was opened, the UPS employee observed its contents—approximately three pounds of off-white powder and a bar of soap. In response to the UPS employee's call, Agent Dennis Steger went to the UPS office. A field test of the powder was positive for cocaine. Agent Steger took the package and its contents to the DEA office in Saginaw.

On December 5, 1988, the UPS office received a telephone call from a woman who complained that a package she shipped "next day air" from California to Saginaw had not been timely delivered. The caller's description of the package was consistent with the UPS package in DEA custody. The caller left her name and telephone number with the UPS employee who prom-

ised to investigate her complaint. The UPS employee contacted the DEA about the woman's call and then telephoned her to receive the proper address. She gave 2004 Limerick Street, Apartment 8, Saginaw, Michigan as the correct street address for the package.

The utilities for the residence located at 2004 Limerick Street, Apartment 8, were registered to Lem Hughes. A preliminary investigation revealed that Hughes had been arrested in 1988 by the Saginaw Police Department and subsequently pled guilty to possession of cocaine.

The DEA agents reconstructed the package, having replaced most of the cocaine with flour. The interior of the box was dusted with a powder which can be detected only under black light.

On December 6, 1988, an undercover DEA agent, dressed as a UPS employee, delivered the reconstructed package to a person who answered the door at 2004 Limerick Street, Apartment 8. Shortly thereafter, three men exited the apartment with the package in a white plastic bag. The three men walked up the street and then returned to the parking lot of the apartment building. During the course of the walk, the men passed the plastic bag back and forth among themselves.

A 1988 Cadillac met the three men upon their return to the parking lot. A check of the license plate number indicated that the car was registered to Lem Hughes, Jr. of 2207 Whittier Street, Saginaw, Michigan. The car was driven from the parking lot to the Whittier Street residence. After the car arrived at the residence, the three men from the Limerick Street apartment departed on foot from the Whittier Street residence.

DEA agents arrested William Harris ("Harris") and Kirk Gilyard ("Gilyard") a short distance away from the Whittier Street residence. The third person evaded arrest. DEA agents then returned to the Whittier Street residence, knocked, announced themselves and sought entry.

They could hear people hurrying and water running from within. When the occupants failed to answer the door, the agents executed a forced entry into the Whittier Street residence. The DEA agents arrested Hughes, Ezeal Myles ("Myles") and Daniel Davis ("Davis") inside the Whittier Street residence.

A security sweep of the premises revealed the opened UPS package, scales and a double sink clogged with white powder on one side and with two plastic bags containing white powder residue on the other side. The powder which the DEA agents had placed in the reconstructed package was detected on Hughes, Davis and Myles.

**B.**

On January 5, 1989, a federal grand jury returned a three count indictment. Count 1 charged Hughes, Davis, Myles, Harris and Gilyard with conspiracy to possess with intent to distribute and to distribute five kilograms or more of a substance containing cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846. The indictment alleged that the conspiracy lasted from March 1, 1988 to December 6, 1988. Count 2 charged Hughes, Davis, Myles, Harris and Gilyard with attempted possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 846 and 18 U.S.C. § 2. Count 3 charged Hughes, Myles, Harris and Davis with physical interference with a federal law enforcement search, in violation of 18 U.S.C. § 2232(a). A superseding indictment was returned on February 15, 1989, alleging the same facts and violations of law, but deleting Harris as a co-conspirator.[1]

On March 16, 1989, Hughes pled guilty to Count 1 pursuant to a Rule 11 plea agreement. See Fed.R.Crim.P. 11. The plea agreement provided that the government would request the district court to impose a sentence of not less than twelve years nor more than fifteen years. At the change of plea hearing, the district court

1. Harris was deleted from the superseding indictment as a result of plea negotiations and his cooperation with the investigation of this case.

informed Hughes that the conspiracy charge carried a maximum sentence of life imprisonment plus a $4,000,000 fine. The district court also informed Hughes that a minimum sentence of at least ten, but perhaps as long as twenty years would apply.[2] The district court postponed for a future date the ruling on the precise length of the applicable mandatory minimum sentence.

The record, however, reflects Hughes' acknowledgement of his understanding that the Rule 11 plea agreement provided that he would receive a sentence between twelve and fifteen years regardless of the applicable mandatory minimum sentence. The district court and Hughes engaged in the following colloquy:

> THE COURT: The Government has agreed if you plead guilty and cooperate —I'm assuming for the purposes now that you will—that they would move that your sentence would be reduced ... to somewhere between 144—between 12 years and 15 years.
>
> RESPONDENT [hereinafter HUGHES]: Yes, sir.
>
> THE COURT: And 12 years is 144 months. So by pleading guilty and cooperating with the Government, you have a hope that your sentence will not be longer than 144 months. You have an expectation it would not be longer than 180 months.
>
> If you didn't plead guilty, there is [a] risk that [the sentence] would be substantially higher than that, either under the guidelines or under the minimum sentence, do you understand that?
>
> [HUGHES]: Yes, I do.
>
> THE COURT: The Government would be committed to make this move for this reduction if you cooperate, do you understand that?
>
> [HUGHES]: Yes.

> THE COURT: If you cooperated and they didn't move to do it or if the Court would deny the motion, then you would have the right to withdraw your plea, do you understand?
>
> [HUGHES]: Yes.

Joint Appendix at 89–90.

Since Hughes committed the offense after November 1, 1987, the United States Sentencing Guidelines were employed to calculate his sentence. The district court's guideline calculation designated Hughes' offense level as 33 and his criminal history category as I, requiring a sentence ranging from 135 to 168 months, i.e., eleven years and three months to fourteen years. The Rule 11 plea agreement provided that incarceration would not exceed one month over the lower limit of the guideline range found to be applicable by the district court. The plea agreement further provided that the government would recommend a sentence ranging from 144 to 180 months, i.e., twelve to fifteen years, if Hughes provided substantial assistance to the government. Where the minimum guideline range is less than the statutorily mandated minimum sentence, the latter establishes the lower limit of the sentencing range. *See* U.S.S.G. § 5G1.1(c)(1). Thus, if the applicable mandatory minimum were twenty years, instead of ten, the district court would be bound by a twenty-year minimum sentencing range notwithstanding the lower guideline minimum sentence, unless the government moved for a downward departure because of Hughes' substantial assistance. *See* 18 U.S.C. § 3553(e) (providing limited authority to impose a sentence below the statutory minimum, upon the government's motion, where the defendant has provided substantial assistance in the investigation

---

**2.** In order to ascertain the applicable mandatory minimum sentence, the district court was required to determine whether Hughes' prior state felony drug conviction would be considered in formulating the sentence. In the change of plea hearing, the district court stated the following:

> I want to say right now as far as you pleading guilty is concerned, I'm going to assume and advise you that there is a minimum sentence of 10 years, and the Government has an argu-

ment that [it] could be 20, but I do not know it would be 20. They have to advise you of the minimum, and I'm telling you there is at least a minimum of 10 and an argument that [it] is 20, do you understand?

Joint Appendix at 75 (Change of Plea Hearing, Mar. 16, 1989). Hughes responded that he understood that there would be a mandatory minimum of at least 10 years with the possibility of 20 years. *Id.*

or prosecution of another person who has committed an offense).

On June 16, 1989, Hughes filed a Motion for Compliance with Rule 11 or Alternative Relief, seeking a determination of the applicable mandatory minimum sentence. In the alternative, he sought to withdraw his guilty plea. Hughes argued that the twenty-year mandatory minimum did not apply to him because he had no prior conviction since the facts surrounding his previous state conviction occurred during the course of the conspiracy to which he pled guilty in the instant case. He also maintained that his bargaining position would be weakened by a finding that the twenty-year mandatory minimum applied. The government argued that Hughes was subject to a mandatory minimum of twenty years, pursuant to 21 U.S.C. § 841(b)(1)(A). Section 841(b)(1)(A) provides for an enhanced mandatory minimum sentence for a person whose prior conviction for a felony drug offense has become final.

On June 29, 1989, the district court determined that Hughes' earlier state felony drug conviction constituted a "prior conviction" under 21 U.S.C. § 841(b)(1)(A). Accordingly, the twenty-year mandatory minimum sentence was applicable to Hughes. The district court rejected Hughes' contention that the twenty-year mandatory minimum would be inapplicable as a matter of law if the prior offense occurred during the course of the conspiracy. Moreover, the district court found that the conspiracy continued after Hughes' state felony drug conviction became final.

After the district court determined that the mandatory minimum sentence for Hughes was twenty years, Hughes withdrew his motion to set aside his guilty plea and proceeded with sentencing. *See* Joint Appendix at 138 (Sentencing Hearing June 29, 1989). Upon the government's motion,

the district court departed below the twenty-year mandatory minimum[3] and sentenced Hughes to a prison term of twelve years, a supervisory release term of ten years and a $50 special assessment.

On July 10, 1989, Hughes filed a timely notice of appeal.

## II.

■ Title 21 United States Code § 846 provides:

Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

Since Hughes pled guilty to conspiracy to possess with intent to distribute and to distribute five kilograms of a substance containing cocaine, the district court applied 21 U.S.C. § 841(b)(1)(A)[4] which contains the following enhancement provision:

If any person [conspires to possess with intent to distribute and to distribute 5 kilograms or more of a substance containing cocaine] after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment....

Hughes argues that his prior state felony drug conviction was for possession of cocaine in connection with the conspiracy to which he pled guilty in the instant case, therefore, the state felony drug conviction does not provide an adequate predicate offense for the enhancement of his sentence. Hughes assigns error to the district court's application of the twenty-year mandatory minimum enhancement provision to his sentence. Accordingly, Hughes contends that the ten-year mandatory minimum sentence applies to him on the facts of this case.

---

3. The downward departure was pursuant to 18 U.S.C. § 3553(e).

4. A person who violates § 841(a) and meets one of the predicate definitions of drug offenders subject to § 841(b)(1)(A) mandatory sentencing, *see* § 841(b)(1)(A)(i)–(viii), receives a mandatory minimum of ten years imprisonment. If

such person has one qualifying prior conviction upon violating § 841(a), he or she receives a mandatory minimum sentence of twenty years and a maximum sentence of life. Finally, if such person has two qualifying convictions upon violating § 841(a), that person receives life without the possibility of release.

*See* 21 U.S.C. § 841(b)(1)(A) (setting a ten-year mandatory minimum for an offender who does not have a prior felony drug conviction and where neither death nor serious bodily injury resulted from the instant offense).

Several circuits have interpreted the final conviction language of § 841(b)(1) to apply "to a conviction which is no longer subject to examination on direct appeal, including an application for certiorari to the United States Supreme Court, either because of disposition on appeal and conclusion of the appellate process, or because of the passage, without action, of the time for seeking appellate review." *United States v. Morales,* 854 F.2d 65, 69 (5th Cir.1988); *accord United States v. Lippner,* 676 F.2d 456, 467 (11th Cir.1982) (holding "a conviction is not final until all avenues of direct attack have been exhausted"); *Williams v. United States,* 651 F.2d 648, 650–51 (9th Cir.1981) (conviction not final for purposes of enhancement where the United States Supreme Court, at the time of the challenged sentencing, had not yet denied the petition for writ of certiorari to review the underlying prior conviction); *United States v. Allen,* 566 F.2d 1193, 1195 (3d Cir.1977) ("[W]e construe § 841(b)(1)(B) to mean that a prior conviction is not final for purposes of recidivist sentencing while that conviction is subject to direct appellate review."), *cert. denied,* 435 U.S. 926, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978). While we have not ruled on this issue, *Baker v. United States,* 781 F.2d 85, 91 (6th Cir.), *cert. denied,* 479 U.S. 1017, 107 S.Ct. 667, 93 L.Ed.2d 719 (1986), a district court within our circuit recently held that a defendant's prior guilty plea to possession of cocaine, under Mich.Comp.Laws § 333.7403, and the probation sentence he received constitute a final "prior conviction" for the purposes of § 841(b)(1)(B)'s enhancement provision. *United States v. Petros,* 747 F.Supp. 368 (E.D.Mich.1990). The *Petros* court reached this conclusion even though the state court guilty plea would be deemed discharged and dismissed without adjudication of guilt upon the fulfillment of the terms and conditions of probation. *Id.* at 373 (citing *Morales,* 854 F.2d at 68–69).

Hughes' prior conviction was undoubtedly final because the time for seeking appellate review of the state conviction had passed when he committed the offense in the instant case. *See Morales,* 854 F.2d at 69. Hughes, nevertheless, argues that despite the finality of his conviction for possession of cocaine, such prior conviction is not an adequate basis for enhancement under § 841(b)(1)(A).

Hughes concedes that his position is not directly supported by any case law. He relies upon a strained reading of *United States v. Nichols,* 741 F.2d 767 (5th Cir. 1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1186, 84 L.Ed.2d 333 (1985), to argue his position. *Nichols,* a double jeopardy case which does not raise any sentencing issues, provides limited guidance to this Court. The Fifth Circuit analyzed two double jeopardy issues in *Nichols:* (1) whether prior convictions for conspiracy to import cocaine and conspiracy to possess with intent to distribute cocaine, based upon a single shipment of the controlled substance, bar the then-pending prosecution for the substantive offenses of importing and possessing cocaine with intent to distribute; and (2) whether such prior convictions bar the prosecution of charges of conspiracy to import cocaine and of conspiracy to possess with intent to distribute cocaine based on earlier shipments.

Since there is only one conspiracy at issue in the instant case, only the first issue raised in *Nichols* is directly relevant to our analysis. The Fifth Circuit held that the conspiracy convictions did not bar trial of the charges on the substantive violations. *Id.* at 768, 772. The *Nichols* court also held that since there existed only one unlawful agreement to commit multiple violations of the drug control law, the prior convictions for conspiracy to import cocaine and conspiracy to possess with intent to distribute cocaine barred a second prosecution on the charge of conspiracy to possess with intent to distribute and to distribute cocaine. *Id.* at 772.

The *Nichols* court reasoned that the double jeopardy bar provides three types of protection: (1) protection against a second

prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishment for the same offense. *Id.* at 771. The court then applied five factors to determine whether Nichols was involved in one conspiracy or multiple conspiracies. This analysis, which Hughes attempts to employ, does not implicate the district court's enhancement of Hughes' sentence for conspiracy to possess with intent to distribute and to distribute cocaine. Hughes' prior state felony drug conviction was for the substantive offense of cocaine possession, not conspiracy to possess cocaine. *Nichols* is relevant to the instant case only in as much as it holds that the prosecution on conspiracy charges in one action does not preclude the separate prosecution of the multiple substantive offenses charged. *Id.* at 772.

We now turn to the Fourth Circuit's analysis in *United States v. Blackwood*, 913 F.2d 139 (4th Cir.1990), for guidance on the issue of whether Hughes' state felony drug conviction may be used as a predicate for enhancement of his sentence. *Blackwood* involved a defendant's challenge to the district court's enhancement of his sentence based on two prior convictions. *See* 21 U.S.C. § 841(b)(1)(A) (prescribing a mandatory sentence of life imprisonment for defendant with two prior felony drug convictions). At issue was whether two prior convictions arising out of a single criminal episode should be construed as a single conviction for purposes of sentencing under § 841(b)(1)(A).

Blackwood's criminal record indicated two prior convictions, but such convictions "arose out of a single criminal episode." *Blackwood*, 913 F.2d at 145. Seven years prior to the subject conviction, state police officers arrested Blackwood for possession of a large quantity of marijuana he was transporting in a pickup truck. Less than two hours after his arrest, the officers secured a search warrant for Blackwood's motel room. There, they seized a greater quantity of marijuana. A grand jury returned two separate indictments—one charging unlawful possession of the marijuana in the pickup truck and the other charging unlawful possession of the marijuana in the motel room. The two cases received separate criminal docket numbers, but they were consolidated for trial. Blackwood was convicted of both possession charges and sentenced to two consecutive five-year sentences. In an appeal from this case, the North Carolina Court of Appeals ruled that the trial court had not abused its discretion in consolidating the cases, but remanded the case for resentencing because the trial court had not properly considered aggravating and mitigating factors. On remand, Blackwood received two concurrent five-year sentences.

In analyzing the consolidation issue, the North Carolina Court of Appeals characterized the two charges as "stem[ming] from defendant's possession with intent to sell marijuana within a limited geographical area and period of time." *Id.* (citing *State v. Blackwood*, 60 N.C.App. 150, 298 S.E.2d 196, 199 (1982)). Blackwood argued, and the Fourth Circuit agreed, that because his two prior convictions were considered to be "no more than two components of a single act of criminality," they should be construed as a single prior conviction for purposes of sentencing under § 841(b)(1)(A). *Id.*

■ The *Blackwood* court rejected the government's argument that the plain meaning of § 841(b)(1)(A) requires that two convictions be counted separately, regardless of the state court's view that they were part of a single act of criminality. Relying on a series of decisions interpreting the sentencing enhancement provision of 18 U.S.C. § 1202(a), the predecessor to 18 U.S.C. § 924(e),[5] the subsequent legisla-

---

5. *See United States v. Petty*, 798 F.2d 1157 (8th Cir.1986), *vacated and remanded, Petty v. United States*, 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810 (1987), *on remand, United States v. Petty*, 828 F.2d 2, 3 (8th Cir.1987) (per curiam) (adopting Solicitor General's argument that 18 U.S.C. § 1202(a)(1), a sentencing enhancement statute, was "intended to reach multiple criminal episodes that were distinct in time, not multiple felony convictions arising out of a single criminal episode"), *cert. denied*, 486 U.S. 1057, 108 S.Ct. 2827, 100 L.Ed.2d 928 (1988).

tive history of the amendment to § 924(e) clarifying the substantive meaning of "previous convictions," and the congressional intent to implement an incremental approach to punishment of repeat offenders, the Fourth Circuit concluded that § 841(b)'s increased punishments are triggered by predicate criminal episodes that occur at distinct times. *Id.* at 146–47.

The *Blackwood* court relied on *United States v. Petty*, 828 F.2d 2 (8th Cir.1987) (per curiam), *cert. denied*, 486 U.S. 1057, 108 S.Ct. 2827, 100 L.Ed.2d 928 (1988), which held that § 924(e) enhanced punishment for multiple criminal episodes that were distinct in time. *Id.* at 3. Petty's predicate conviction resulted from a six-count indictment, arising from a single event where six individuals were robbed at the same time and location. The district court sentenced him under § 924(e) and the court of appeals affirmed the sentence. The Supreme Court remanded the case for reconsideration based on the Solicitor General's position that multiple convictions arising out of the same incident would not support enhanced sentencing under the statute. *Petty v. United States*, 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810 (1987). Other circuits that have considered the issue raised in *Petty* have adopted the multiple criminal episodes standard. *See, e.g., United States v. Gillies*, 851 F.2d 492, 497 (1st Cir.) (adopting multiple criminal episodes standard), *cert. denied*, 488 U.S. 857, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988); *United States v. Herbert*, 860 F.2d 620, 622 (5th Cir.1988) (holding two burglaries on different days were distinct criminal transactions for purpose of § 924(e)), *cert. denied*, 490 U.S. 1070, 109 S.Ct. 2074, 104 L.Ed.2d 639 (1989); *United States v. Wicks*, 833 F.2d 192, 194 (9th Cir.1987) (per curiam) (holding two burglaries perpetrated on the same night at different locations but prosecuted together were multiple criminal episodes that were distinct in time), *cert. denied*, 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988). In *United States v. McDile*, 914 F.2d 1059 (8th Cir. 1990) (per curiam), the Eighth Circuit held that drug sales spread over a two-month period and made to two different individuals constituted distinct criminal episodes warranting sentencing enhancement under § 924(e). *Id.* at 1061.

We agree with the *Blackwood* court's analysis and its finding that through the structure of § 841(b)(1)(A)'s mandatory enhancement provisions, Congress mandated a "progressive, incremental, 'stairstep' approach to punishment of repeat offenders." *Blackwood*, 913 F.2d at 147. Such structure indicates that the purpose of this statute is to target recidivism, *see Allen*, 566 F.2d at 1195, a legitimate and long-held goal of the criminal justice system. *See Graham v. West Virginia*, 224 U.S. 616, 623, 32 S.Ct. 583, 585, 56 L.Ed. 917 (1912) ("The propriety of inflicting severer punishment upon [repeat] offenders has long been recognized in this country and in England. They are not punished the second time for the earlier offense, but the repetition of criminal conduct aggravates their guilt and justifies heavier penalties when they are again convicted."); *McDonald v. Massachusetts*, 180 U.S. 311, 312, 21 S.Ct. 389, 390, 45 L.Ed. 542 (1901) (affirming sentence under Massachusetts statute imposing a heavier penalty upon conviction of habitual criminal).

We conclude that the district court properly determined that the twenty-year mandatory minimum applied to Hughes because, at the time of his offense, Hughes had a prior felony drug conviction which arose from a separate criminal episode, an offense that was distinct in time. An episode is an incident that is part of a series, but forms a separate unit within the whole. Although related to the entire course of events, an episode is a punctuated occurrence with a limited duration. The criminal events that constitute the bases for Hughes' conviction for possession of cocaine and his subsequent conviction for conspiracy do not represent a single criminal episode. Such events occurred at distinct times spanning a nine-month period. The initial drug raid, which precipitated the state conviction, occurred on March 4, 1988. The drug raid which gave rise to Hughes' conspiracy conviction occurred on December 6, 1988. The conspiracy, alleged to

have commenced on March 1, 1988, ceased more than nine months *after* the possession offense occurred and approximately three months *after* the conviction for possession of cocaine became final. The possession of cocaine constituted one episode which concluded with the first drug raid on March 4, 1988. In contrast, the conspiracy to possess with intent to distribute and to distribute cocaine constituted another episode that did not conclude until December 6, 1988. While the raids occurred at the same residence and involved the same type of controlled substance, the intervening amount of time and the finality of the state felony drug conviction lead us to conclude that the twenty-year mandatory minimum was properly applied.

Our finding that the state felony conviction is a proper predicate for sentencing enhancement within the meaning of § 841(b)(1)(A) is further supported by an examination of the facts of this case in light of the statute's legislative purpose to punish recidivists more severely. After Hughes' state felony conviction, which became final in September 1988, Hughes was given ample opportunity to discontinue his involvement in unlawful drug-related activity. That the conspiracy was intact some nine months after the March 4, 1988, raid and three months after the resulting conviction heightens Hughes' culpability. Hughes' repeated criminal behavior is the kind Congress targeted for imposition of a harsher penalty by § 841(b)(1)(A).

### III.

We find that the state felony drug conviction arose out of a separate criminal episode from the conviction in the instant case and that the state felony drug conviction was final at the time of his offense. We, therefore, hold that the twenty-year mandatory minimum applied to Hughes' sentence. Accordingly, we AFFIRM the conviction and sentence entered by the Honorable James P. Churchill, United States District Judge for the Eastern District of Michigan.