993 F.2d 1540
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Greg COMMANDER, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Kevin Commander, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Horace Omar Jackson, a/k/a Todd Banks, a/k/a Omar Jackson,
a/k/a Horace Banks, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Melvin Derrell Wilson, a/k/a Crip, Defendant-Appellant.
 Nos. 92-5002, 92-5013, 92-5059 and 92-5060.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 4, 1993
Decided: June 2, 1993
 
 Appeals from the United States District Court for the Middle District of North Carolina, at Greensboro. Richard C. Erwin, Senior District Judge. (CR-91-57-G)
 David Ferris Tamer, Winston-Salem, North Carolina, for Appellant Jackson.
 William L. Osteen, Jr., Adams & Osteen, Greensboro, North Carolina, for Appellant Wilson.
 Susan Hayes, Greensboro, North Carolina, for Appellants Commander. Sean Connelly.
 United States Department of Justice, Washington, D.C., for Appellee. Richard A. Elmore.
 Pfaff, Elmore & Albright, Greensboro, North Carolina, for Appellant Greg Commander.
 E. Raymond Alexander, Jr., Greensboro, North Carolina, for Appellant Kevin Commander.
 Robert H. Edmunds, Jr., United States Attorney, David B. Smith, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.
 M.D.N.C.
 NOS. 92-5002, 92-5059 and 92-5060 AFFIRMED; NO. 92-5013 SENTENCE AFFIRMED.
 Before HALL, Circuit Judge, BUTZNER, Senior Circuit Judge, and POTTER, United States District Judge for the Western District of North Carolina, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Greg Commander, Kevin Commander, Horace Jackson, and Melvin Wilson appeal judgments of conviction and sentences relating to a conspiracy to distribute and to possess with intent to distribute crack cocaine. We affirm the judgments with one exception. We modify Kevin Commander's sentence of supervised release and remand with instructions to the clerk of the district court to make an appropriate entry on the docket.
 
 
 2
 * Greg Commander, Kevin Commander, Jackson, and Wilson belonged to the "Juice Crew," who sold crack cocaine in High Point, North Carolina. They were charged along with other members of the "Juice Crew" in a seven-count indictment alleging violation of 21 U.S.C. § 941(a)(1) and (b)(1)(A). Count I charged conspiracy to possess with intent to distribute multiple ounce quantities of cocaine base. Counts II, III, IV, and V, alleged substantive offenses.
 
 
 3
 Greg Commander, Kevin Commander, Jackson, and Wilson were tried together. Other codefendants were severed. The jury found each appellant guilty of counts I, II, III, IV, and V. Greg Commander and Kevin Commander each received a sentence of 292 months of imprisonment and 10 years of supervised release. The court sentenced Jackson to 262 months of imprisonment and 5 years of supervised release. It sentenced Wilson to 240 months of imprisonment and 10 years of supervised release.
 
 II
 
 4
 Greg Commander, Kevin Commander, Jackson, and Wilson contend that their due process rights and their rights under the Confrontation Clause of the Sixth Amendment were violated when the court limited the scope of their cross-examinations of Antonio Wideman and his fiancee, Gwen Ewing. Wideman was a major crack supplier for the Commanders and Wilson. He testified for the government pursuant to a plea agreement. The appellants contend that their inability to explore Ewing's relationship with Wideman, her prior criminal involvement with the conspiracy, and the facts concerning Wideman's guilty plea constitute reversible error.
 
 
 5
 We review the district court's limitations of cross-examination for abuse of discretion. United States v. Piche, 981 F.2d 706, 716 (4th Cir. 1992). If a reasonable jury would have received a significantly different impression of Ewing's or Wideman's credibility had counsel been able to question them about relevant information, the restrictions constitute reversible error. See Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986).
 
 
 6
 We first turn to the testimony of Ewing. Ewing was involved in the conspiracy, but she had not been indicted as of the date of trial. She testified that she and Wideman became involved romantically and lived together for several months before his arrest. She told the jury that after Wideman's arrest they talked often, were able to visit occasionally, and that they planned to be married. She consistently maintained that they never discussed the trial when they talked to each other.
 
 
 7
 Ewing also testified that she had assisted Wideman with some drug transactions. Specifically, she told the jury that she had accompanied Wideman when he purchased crack cocaine from Turner and had purchased approximately a thousand dollars worth of crack from Greg and Kevin Commander for Wideman.
 
 
 8
 The Commanders, Jackson, and Wilson argue that Ewing's interest in assisting Wideman receive a lesser sentence and her own interest in avoiding indictment biased her testimony. They maintain that to expose this bias to the jury, it was necessary to question Ewing about the date on which she and Wideman decided to become married, the amount of her phone bills while Wideman was incarcerated, and her criminal association with Wideman.
 
 
 9
 We are unpersuaded that the court's decision to restrict cross-examination of Ewing in these three areas constitutes reversible error. The jury was aware of the extent of Ewing's romantic and criminal involvement with Wideman and that it was in Ewing's interest for Wideman to receive a lighter sentence. The dates on which Ewing and Wideman became engaged and planned to become married were not necessary to assess any bias that may have resulted from their romantic relationship. Nor was the dollar amount of Ewing's long distance phone bill while Wideman was incarcerated.
 
 
 10
 Moreover, counsel was permitted to ask Ewing whether she and Wideman discussed the trial after Wideman pleaded guilty. Throughout this questioning, Ewing consistently maintained that they did not. The jury was aware that Ewing and Wideman had time to discuss the trial. We see no abuse of discretion in the court's refusal to allow questions about Ewing's phone bills.
 
 
 11
 Finally, Ewing did testify about her criminal involvement in the conspiracy. She was cross-examined about her interest in avoiding prosecution and whether she knew that she could be indicted for her involvement in the conspiracy. Further cross-examination on this point was not necessary to explore any potential bias on the part of Ewing.
 
 
 12
 We now turn to the cross-examination of Wideman. Wideman had pleaded guilty to having used or carried a firearm during and in relation to a drug trafficking crime. He testified to this part of his plea agreement but denied having used the gun in connection with a drug transaction. The court sustained the government's objections to questions designed to show that Wideman carried a gun with him when he sold drugs to an undercover agent and that he had a gun in his house when he was arrested.
 
 
 13
 Defendants argue that had they been able to question Wideman about the firearms plea, "the jury could have found [his] testimony unreliable and the evidence presented by the government insufficient to sustain the conviction." The jury, however, had sufficient information before it to assess Wideman's credibility. It knew that Wideman was testifying pursuant to a valid plea agreement, and it knew the terms of that agreement. Wideman was subject to an exhaustive cross-examination, most of which was designed to attack his credibility. The court's restriction was not an abuse of its discretion.
 
 
 14
 In short, the jury had sufficient information to assess any motive Ewing or Wideman may have had to testify untruthfully. It had adequate knowledge to assess bias. The jury was not deprived of any relevant information that would have given it a significantly different impression of both witnesses' credibility.
 
 III
 
 15
 The Commanders, Jackson, and Wilson appeal their convictions on count III of the indictment on the grounds that there was insufficient evidence to support the convictions. Count III charged them with willful, knowing, and intentional possession with intent to distribute approximately two kilograms of crack cocaine.
 
 
 16
 Wideman was the principal witness for the government on count III. He testified that in December of 1989 Don Asanti Burrus took him to Kevin Turner's home to meet Turner. He told the court that Jackson, Turner, Jerome Bethea, and Robert Smith were in the same room and that Jackson and Turner were cutting up two kilograms of crack cocaine into eight or nine ounce pieces and packaging the pieces for distribution. He paid $700 for one of the pieces of crack.
 
 
 17
 The evidence disclosed Turner and Jackson were coconspirators of the Commanders and Wilson. Applying Pinkerton v. United States, 328 U.S. 640 (1946), the district court properly instructed the jury that a defendant could be found guilty of a substantive crime committed by a conspirator if the defendant was a member of the conspiracy, the crime was committed in furtherance of the conspiracy, and the defendant could have reasonably foreseen that the crime might be committed by his coconspirator.
 
 
 18
 The Commanders, Jackson, and Wilson argue that because Burrus and Vanessa Dow, Turner's girlfriend who lived with him, failed to testify about the December meeting, the testimony of Wideman was inherently insufficient.
 
 
 19
 Burrus's testimony conflicted with Wideman's. Burrus told the jury that in November of 1989, he took Wideman to meet Turner and purchased between $700 and $1000 worth of drugs from Turner for Wideman. He stated that he did not see Turner in North Carolina again until the Spring of 1990. He never testified to bringing Wideman to meet Turner in December of 1989, and counsel did not question him about the December meeting.
 
 
 20
 Dow's testimony neither contradicted nor corroborated Wideman's testimony as it related to the offense charged in count III. Wideman did not testify that Dow was present, and it is plausible that Dow did not know of the meeting.
 
 
 21
 If a reasonable jury, after viewing the evidence in the light most favorable to the government, could find the essential elements of the crime, the guilty verdict will stand. Jackson v. Virginia, 443 U.S. 307, 319 (1979). It is the province of the jury, not this court, to assess the credibility of a witness. Glasser v. United States, 315 U.S. 60, 80 (1942).
 
 
 22
 The issue raised with regard to Wideman's testimony on count III relates to credibility not sufficiency. Taken in the light most favorable to the government, Wideman's testimony, together with other evidence about the conspiracy, establishes all the elements necessary to convict the appellants of possessing crack cocaine with intent to distribute two kilograms at Turner's home in 1989 as charged in count
 
 III.
 IV
 
 23
 Jackson protests his conviction on the grounds that the district court improperly denied his pretrial motion to sever his trial from that of the other nine defendants. Jackson admits that the evidence at trial showed his participation in drug transactions with other members of the "Juice Crew." He argues that the evidence against his codefendants substantially and prejudicially outweighed that which was offered against him. This disparity in evidence and the large amount of drugs involved, he contends, biased the jury and denied him a fair trial.
 
 
 24
 Generally speaking, defendants who are jointly indicted on charges of conspiracy should be tried together. See Zafiro v. United States, 60 U.S.L.W. 4147, 4148 (U.S. 1992). Federal Rule of Criminal Procedure 14, however, allows a district court to order separate trials if one defendant will be prejudiced by the joinder of defendants or offenses. If the prejudice is slight, the court may give a cautionary instruction to the jury instead of severing the trial. See Zafiro, 61 U.S.L.W. at 4148-49.
 
 
 25
 We review the court's decision to maintain the joined defendants for abuse of discretion. If the joinder prevented the jury from reaching a reliable verdict about guilt or innocence, the court's action constitutes reversible error. Zafiro, 61 U.S.L.W. at 4148.
 
 
 26
 Jackson was not denied a fair trial due to his joinder with the other defendants. The evidence connected Jackson to the crack cocaine conspiracy. Much of the evidence about which Jackson complains would have been admissible in his trial had he been tried separately, and the court gave a proper cautionary instruction.
 
 V
 
 27
 Greg Commander, Kevin Commander, Jackson, and Wilson appeal their sentences. They each maintain that the district court failed to resolve factual disputes regarding the specific amount of crack cocaine attributable to each of them for purposes of sentencing as required by the Sentencing Guidelines. See U.S.S.G. § 1B1.3; United States v. Edwards, 945 F.2d 1387, 1392 (7th Cir. 1991).
 
 
 28
 The record clearly demonstrates that the court considered the amount of cocaine base reasonably foreseeable to each defendant and the sentences are not invalid for this reason. The amount of cocaine involved in the conspiracy equaled 3,154.51 grams. The presentence report attributed "approximately 2,540.61 grams of crack cocaine but in no event less than 50 grams" to Greg Commander. At the sentencing hearing, the court purported to adopt the amount of cocaine base attributable to Greg Commander as it appeared in the presentence report but later concluded that the amount of cocaine base reasonably foreseeable to Greg Commander was 3,154.5 grams. Greg Commander contends that this procedure failed to comply with Federal Rule of Criminal Procedure 32 and United States v. Morgan, 942 F.2d 243, 245 (4th Cir. 1991).
 
 
 29
 When the defendant alleges a factual inaccuracy in the presentence investigation report, the district court may comply with Rule 32 by expressly adopting the recommendations of the presentence report. "When the district court elects to take this approach ... it must make clear on the record that it has made an independent finding and that its finding coincides with the recommended finding in the presentence report." Morgan, 942 F.2d at 245.
 
 
 30
 The court made an express finding that Greg Commander could reasonably foresee being held responsible for all of the crack cocaine involved in the charged conspiracy, 3,154.5 grams. See U.S.S.G. §§ 1B1.3, Application Note 1, 2D1.4, Application Note 1; Edwards, 945 at 1387, 1392. Moreover, the difference between 2.5 kilograms of cocaine base and 3.5 kilograms of cocaine base is immaterial. According to § 2D1.1(c)(3), a base offense level of 38 applies when the amount of cocaine base involved is at least 1.5 kilograms but less than 5 kilograms.
 
 
 31
 Kevin Commander asserts the same error as does his brother. In his case, the court expressly applied the same findings of fact from Greg Commander's sentencing hearing to him. For the same reasons that Greg Commander's sentence was proper, we find no Morgan error in Kevin Commander's sentence.
 
 
 32
 Jackson protests that the court made three separate findings of the amount of crack cocaine attributable to him and failed to show clearly the amount of drugs for which he could reasonably foresee being held accountable.
 
 
 33
 Jackson's presentence report concluded that Jackson should be held accountable for 2,540.61 grams of cocaine base. At his sentencing hearing, Jackson argued that he should be held responsible for no more than 540.61 grams of cocaine base, the amount involved in the conspiracy after the 2000 gram transaction in December of 1989. The government conceded that Jackson should not be held accountable for the amount of crack cocaine involved in the conspiracy before December 1989 but maintained that Jackson should be held responsible for the 2,000 grams transaction.
 
 
 34
 The court agreed with the government, finding that the amount of crack cocaine reasonably foreseeable to Jackson was equal to all amounts in the conspiracy on and after December 13, 1989. It initially computed this quantity to be 2,533.51 grams but later stated that it was 1,941.81 grams. It used the 1,941.81 figure to calculate Jackson's base offense level.
 
 
 35
 Jackson points to the different figures used by the court and argues that the court failed to show what drug amounts were found to be reasonably foreseeable to him. We agree with Jackson that the court erred. Its error, however, was harmless. The court held Jackson responsible for the total amount of cocaine involved in the conspiracy in and following the December meeting, but miscalculated this quantity. It computed the quantity to be less than the correct amount. Moreover, had the proper quantity been used, Jackson's base offense level of 38 would not have changed. See U.S.S.G. § 2D1.1(c)(3) (at least 1.5KG but less than 5KG). The court's mistake in calculating the total amount of crack cocaine involved for those transactions was harmless.
 
 
 36
 We find no error in the court's determination of the amount of drugs for which Wilson was responsible.
 
 VI
 
 37
 Greg Commander, Kevin Commander, and Wilson also appeal their sentences on the grounds that the court misapplied the enhanced penalty provisions of 21 U.S.C. § 841(b)(1)(A). Section 841(b)(1)(A) provides that any person who unlawfully distributes a controlled substance "after a prior conviction for a felony drug offense has become final, ... shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment." In addition, § 841(b)(1)(A) provides that such a defendant shall receive a sentence of supervised release of at least 10 years to follow the term of imprisonment.
 
 
 38
 During the term of the conspiracy that is the basis of this appeal, the Commander brothers and Wilson were convicted of state drug felonies. Before sentencing, the United States filed notices of prior conviction, to which Greg Commander, Kevin Commander, and Wilson each objected. See 21 U.S.C. §§ 950, 951. At sentencing, the court concluded that the prior convictions supported enhancements under § 841(b)(1)(A), and it applied the mandatory minimums to each.
 
 
 39
 We first turn to Wilson's sentence. The court merged counts I through V. Wilson's base offense level was 36, and he was placed in criminal history category III. This produced a guideline range of 235293 months. Pursuant to 18 U.S.C. § 841(b)(1)(A) and section 5G1.1(c)(2) of the sentencing guidelines, the court sentenced him to 240 months.
 
 
 40
 The state court conviction used to enhance Wilson's sentence occurred in January of 1990. The offense involved cocaine that was part of the 500-grams alleged in count II of the federal indictment. Wilson contends that because his state offense comprised part of the criminal episode that was the subject of the federal indictment, it could not serve as the basis for an enhancement.
 
 
 41
 Count V of the federal indictment, however, charged Wilson with possession with intent to distribute crack cocaine on or about July 31, 1990, after Wilson's state court conviction was final. Wilson was convicted of count V. Because that offense occurred after Wilson's state court conviction became final, the enhancement unders 841(b) was proper. Cf. United States v. De Veal, 959 F.2d 536, 538 (5th Cir. 1992); United States v. Hughes, 924 F.2d 1354, 1358-62 (6th Cir. 1991); United States v. Belton, 890 F.2d 9, 10-11 (7th Cir. 1989).
 
 
 42
 Greg Commander appeals his sentence on the same grounds as Wilson. He was convicted in state court of felonious possession of cocaine in June of 1990. He does not dispute the finality of that conviction. Greg Commander was convicted of count V charging an offense that occurred on or about July 31, 1990. For the same reason that the enhancement was proper as to Wilson, it was proper as to Greg Commander.
 
 
 43
 Kevin Commander argues that the enhancement was improper in his case because his state felony conviction occurred on January 31, 1991. The last substantive offense of conviction occurred in July of 1990. The government agrees with Kevin Commander that the enhancement should not have been given.
 
 
 44
 The enhancement provisions of § 841(b)(1)(A) did not affect Kevin Commander's term of imprisonment. His guideline range was 292365 months. The court sentenced him to 292 months.
 
 
 45
 The lack of enhancement, however, affected his sentence of supervised release. The district court imposed a 10-year period of supervised release. Inasmuch as enhancement is improper, the minimum sentence for supervised release is 5 years. 21 U.S.C. § 841(b)(1)(A). Section 5D1.2(a) of the Sentencing Guidelines provides: "If a defendant is convicted under a statute that requires a term of supervised release, the term shall be at least three years but not more than five years, or the minimum period required by statute, whichever is greater." Accordingly, we vacate Kevin Commander's 10-year supervised release sentence and remand for the imposition of a sentence of 5 years' supervised release. See 28 U.S.C.s 2106; United States v. Shulman, 940 F.2d 91, 94 (4th Cir. 1991). His sentence of imprisonment shall not be disturbed. The clerk of the district court is instructed to record the modification of Kevin Commander's supervised release.
 
 
 46
 We find no cause for reversal in the appellants' other assignments of error.
 
 
 47
 No. 92-5002 (Greg Commander) AFFIRMED; No. 92-5059 (Jackson) AFFIRMED; No. 92-5060 (Wilson) AFFIRMED; No. 92-5013 (Kevin Commander) SENTENCE OF IMPRISONMENT AFFIRMED, SENTENCE OF SUPERVISED RELEASE REDUCED FROM 10 YEARS TO 5 YEARS