**UNITED STATES of America,
Respondent,**

v.

**Isaac Leroy STROPE, Movant.**

No. CIV.A. 3:CV–97–425.
No. CRIM. 3:CR–92–055.

United States District Court,
M.D. Pennsylvania.

Nov. 7, 1997.

Michael C. Kostelaba, Wilkes–Barve, PA, for plaintiff.

John C. Gurganus, AUSA, Scranton, PA, for defendant.

### MEMORANDUM AND ORDER

CONABOY, District Judge.

Presently before the Court is the Defendant's habeas corpus motion pursuant to 28 U.S.C. § 2255. (Doc. 84). For the reasons stated below *infra,* we deny the Defendant's § 2255 motion because he has failed to show that he is entitled to any relief.

### FACTUAL BACKGROUND

On February 25, 1992, a Federal Grand Jury sitting in Scranton, Pennsylvania, indicted Isaac Leroy Strope, charging him with one count of conspiracy to distribute methamphetamine (21 U.S.C. § 846); one count of possession with intent to distribute in excess of 100 grams of methamphetamine (21 U.S.C. § 841(a)(a)); one count of possession of a firearm by a convicted felon (18 U.S.C. § 922(g) and § 924(e)); one count of using and carrying a firearm during and in relation to a drug trafficking offense (18 U.S.C. § 924(c)); one count of simple possession of marijuana (21 U.S.C. § 844(a)); and one count of simple possession of cocaine (21 U.S.C. 844(a)). (Doc. 1). Strope entered a plea of not guilty on April 2, 1992. (Doc. 13).

Following a subsequent trial, a jury returned a unanimous verdict finding Strope guilty on all counts, on November 10, 1992. (Doc. 46). The Court then imposed an aggravated sentence of imprisonment of 240 months, and an 8–year term of supervised release to follow his incarceration. (Doc. 63). Strope appealed the conviction, and the Third Circuit Court of Appeals affirmed. (Doc. 77). His subsequent petition for Writ of Certiorari was denied.

The evidence adduced at trial revealed that: On October 21, 1991, Pennsylvania State Trooper Randy M. Divine arrived at a two-vehicle traffic accident, where he found Strope asleep behind the wheel of his truck. After waking Strope up and obtaining his driver information, both parties walked to the Trooper's cruiser in order to obtain Strope's version of the accident. Upon returning to Strope's truck, Divine went to speak to the other party involved in the accident. He then returned to Strope's truck where he found Strope sleeping again. At this time Divine requested permission to search Strope's truck. Strope gave consent.

The initial search revealed a large knife under the seat and a canister which Strope admitted contained marijuana. At this point Divine asked Strope to empty his pockets on the hood of the cruiser which revealed "Zig–Zag" papers, a bag of marijuana, and some U.S. currency. In addition, the troopers located a 9mm gun in Stropes glove compartment; Strope did not have a permit to carry the gun. At this point, Strope was placed under arrest and searched. A small packet of cocaine was found in his coat, along with a small packet of methamphetamine in his sock.

Following a canine search, four ounces of methamphetamine was found in the glove compartment. In addition, three marijuana cigarettes and a 9mm bullet were discovered in the ashtray, along with a makeshift bong and three more 9mm bullets inside the car.

Strope was transported to a hospital for a blood alcohol test, and then taken to the Pennsylvania State Police Barracks in Towanda, Pennsylvania. There, Strope signed a consent form for the search of his house, and requested to speak to a narcotics officer. Strope was then given and waived his Miranda rights prior to his interview with Trooper Dale Culver.

### DISCUSSION

### MOTION FOR HABEAS CORPUS

The defendant has based his motion pursuant to 28 U.S.C. § 2254 on four main

grounds.[1] Each of the four grounds are addressed by the Court below.

### 1. Double Jeopardy

The Defendant had been convicted. and sentenced in Montgomery County on the charges of Possession and Delivery of Methamphetamine as well as Criminal Conspiracy; in Bucks County on the charges of Possession of Methamphetamine(2 counts), Possession with the Intent to Deliver Methamphetamine, and Criminal Conspiracy to Possess and Deliver Methamphetamine (2 counts); and in Bradford County on the charges of Possession of Methamphetamine and Criminal Conspiracy to Deliver Methamphetamine.[2] As a result of the three convictions, the Court sentenced the Defendant under 18 U.S.C. § 924(e)(1).[3] The Defendant now argues that the use of the three prior convictions violated his rights under the Double Jeopardy Clause.

The Defendant argues that because the presentence report classified the Bradford County Conspiracy along with the Bucks County and Montgomery County Conspiracies as the "same common scheme to distribute methamphetamine", the Bradford County Court was precluded from imposing any punishment on him under double jeopardy principles. Therefore, if the Court could not convict him, he would not have the three prior serious drug offense convictions needed to subject him to the 15 year mandatory term of imprisonment. The Defendant has not cited any authority to support his position.

By challenging his Bradford County conviction, the Defendant is asking this Court to re-examine his conviction of approximately 17 years ago, in order to determine that the Bradford County Court was precluded from punishing him. We decline to do so.

In *Custis v. U.S.*, the Supreme Court held that:

Congress did not intend to permit collateral attacks on prior convictions under § 924(e). The statutes language-which applies to a Defendant who has three previous convictions of the type specified-focuses on the *fact* of conviction, and nothing therein suggest that the prior final conviction may be subject to attack for potential constitutional errors before it may be counted.

*Custis v. U.S.*, 511 U.S. 485, 114 S.Ct. 1732, 1735–1736, 128 L.Ed.2d 517 (1994).

The Court did note, however, that a conviction obtained in violation of the right to counsel, did provide a constitutional right to collaterally attack the validity of a previous state conviction used to enhance a sentence under the Armed Career Criminal Act. *Custis*, 114 S.Ct. at 1738; *see also Clawson v. U.S.*, 52 F.3d 806 (9th Cir.1995)(affirmed the lower courts decision to deny the petitioners petition to set aside his federal sentence because the petitioner lacked the constitutional right to collaterally challenge the validity of his state conviction).

■ Here, the Defendant is attempting to challenge the validity of his state sentence under the Pennsylvania Double Jeopardy Clause. Therefore, because the Defendant does not claim a denial of the right to counsel, he has no constitutional right to challenge his state conviction used to enhance his federal sentence under the Armed Career Criminal Act.

■ Even if the Defendants argument was construed as a challenge to his sentence en-

---

**1.** Subsequent to the habeas corpus motion, attorney Michael C. Kostelaba, counsel for Mr. Strope, has submitted a motion for permission to withdraw as counsel and has also requested that substitute counsel be appointed. (Doc. 93). Based upon our determination in this memorandum and order, Defense Counsels requests are denied.

**2.** The Defendant claims that he has only plead guilty to conspiracy to deliver methamphetamine in Bradford County. The relevance of this claim is addressed *infra*.

**3.** 18 U.S.C. § 924(e)(1) provides:

In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years ....

hancement under the Armed Career Criminal Act based on the characterization of his previous convictions as "one common scheme or plan", it still fails. The Armed Career Criminal Act was "intended to reach multiple criminal episodes that were distinct in time, and not multiple felony convictions arising out of a single criminal episode." *U.S. v. Schoolcraft*, 879 F.2d 64, 73(3rd Cir.1989)(quoting *U.S. v. Gillies*, 851 F.2d 492, 497 (1st Cir.1988). In following the intention of the Act, the Second Circuit in *U.S. v. Towne*, stated that "it is fairly well-established in other circuits that 924(e)(1)s reference to conviction pertains to single criminal episodes of felonious criminal activity that are distinct in time, rather than literal convictions." 870 F.2d 880, 889 (2nd Cir. 1989). The question then becomes whether each conviction was the result of the same or separate criminal episode. *U.S. v.Riddle*, 47 F.3d 460, 462 (1st Cir.1995).

 A criminal episode is "an incident that is part of a series, but forms a separate unit within the whole. Although related to the entire course of events, an episode is a punctuated occurrence with a limited duration." *U.S. v. Hughes*, 924 F.2d 1354, 1361 (6th Cir.1991). In *Hughes*, the court held that two previous convictions did not represent a single criminal episode when "such events occurred at distinct times spanning a nine month period." *Id.* at 1361. *See also U.S. v. Maxey*, 989 F.2d 303 (9th Cir.1993)(Defendants convictions for multiple drug sale offenses committed at distinct, different times over a 25 day period were separate predicate offenses for the purposes of § 924(e)). Similarly, here the Defendants' convictions for his drug sale offenses committed at distinct, different times over a 60 day period did not represent a single criminal episode. Rather, each individual offense, separate and distinct from the other, constituted a separate predicate offense for the purposes of § 924(e)[4].

Further support lies in *U.S. v. Kelley*. In *Kelley*, the court held that separate drug deliveries on separate days constituted separate criminal transactions, even though the

deliveries constituted part of a single distribution scheme. 981 F.2d 1464, 1474(5th Cir. 1983), *cert. denied*, 508 U.S. 944, 113 S.Ct. 2427, 124 L.Ed.2d 647 (1993). Similarly, here, although the Defendants' arrests were a part of a single investigation and were classified as "offenses [that] were part of a single common scheme or plan to distribute methamphetamine", each drug delivery occurred on a different day, and thus, each remained a separate criminal episode from the other. Therefore, the Defendants sentence was properly enhanced under the Armed Career Criminal Act, when his three previous convictions, each a separate criminal episode, were counted as distinct convictions for the purposes of the Act.

### 2. "Serious Drug Offense"

The Defendant's second ground upon which he challenges his conviction is that the Bradford County conviction for conspiracy to deliver methamphetamine did not constitute a "serious drug offense" as defined by 18 U.S.C. § 924(e). (Doc. 84, pp. 7). He alleges that the "conspiracy" to deliver methamphetamine is not akin to distributing a controlled substance for the purpose of a sentence enhancement under § 924. The Defendant cites no authority to support his position.

The term "serious drug offense" means:

> an offense under State Law, involving manufacturing, distributing, or possessing with the intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substance Act(21 U.S.C. 802)), for which a maximum term of imprisonment of 10 years or more is prescribed by law.

18 U.S.C. § 924(e)(2)(A)(ii).

 Here, the Defendants conviction for Criminal Conspiracy to Deliver Methamphetamine is an offense which involves possessing a controlled substance with the intent of distributing it. By analogy, in *U.S. v. Preston*, the court held that "a prior conviction for criminal conspiracy to commit robbery could be used to enhance Prestons sentence

---

4. The three distinct times of the Defendants sales in Bradford County, Bucks County, and Mont-

gomery County were March 12, 1980, March 20, 1980, and June 2,1980, respectively.

under the Career Criminals Amendment Act." 910 F.2d 81 (3rd Cir.1990). The court reasoned that "for a criminal conspiracy in Pennsylvania, the prosecution must show that a specific crime was the object of the conspiracy." *Id.* at 86. In *Preston,* the elements of the criminal conspiracy to commit robbery subsumed the elements of robbery, which is a violent felony for the purposes of § 924(e). *Id.* Thus, since Preston was convicted of conspiracy to commit robbery, "the use or threat of physical force", as defined under § 924(e)(2)(B)(I), was "part of his prior conviction for this crime." *Id.* Therefore, by analogy to this related section of § 924(e), the Defendants criminal conspiracy to distribute methamphetamine would be classified as a "serious drug offense." Here, the elements of the criminal conspiracy to distribute the controlled substance both subsume and involve the elements of a delivery charge. Thus, since the Defendant was convicted of conspiracy to deliver methamphetamine, the "offense under State law involving ... distributing ... a controlled substance", as defined under § 924(e)(2)(A)(ii) was part of the Defendants conviction for the crime. Therefore, the Defendants criminal conspiracy to distribute methamphetamine would be classified as a "serious drug offense" for the purposes of the Act.[5]

Further support to classify a conspiracy to deliver as a "serious drug offense" can be found in *U.S. v. Acosta.* In *Acosta,* the court found that a previous state court conviction for conspiracy to traffic marijuana was a predicate conviction for the purpose of the Armed Career Criminal Act, notwithstanding a pending request for post judgment relief. 861 F.Supp. 1 (D.R.I.1994).

### 3. Ineffective Assistance of Counsel

The Defendant argues that his conviction was the result of ineffective assistance of his first counsel, attorney Joseph D'Andrea. The Defendant claims that attorney D'Andrea improperly advised him to make a statement to the government in conjunction with a proposed plea agreement. (Doc. 84).

The Supreme Court has articulated a two-prong test for evaluating claims of ineffective assistance of counsel. First, a defendant must show that counsels performance "fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Second, the defendant must also show that his defense was prejudiced and that "there is a reasonable probability that, but for counsels unprofessional errors, the result of the proceeding would have been different." *Id.* At 694. Furthermore, there is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. 2052.

Here, after considering the Defendants motion, the brief of the Assistant United States Attorney, along with the affidavit of attorney Joseph D'Andrea and record before us, the Defendants motion for ineffective assistance of counsel is denied.

■ Mr. D'Andrea was appointed by the court to represent the Defendant on charges of violating the Controlled Substances Act and Federal Firearms Laws. After reviewing the evidence, including the Defendants admission to the drug trafficking charge, it was in Mr. D'Andreas professional judgment and recommendation that the Defendant consider the possibility of a plea in order to help mitigate the Defendants term of imprisonment. (Doc. 91, Affidavit of Joseph D'Andrea). Once the Defendant agreed, the Assistant U.S. Attorney, John Gurganus, sent a letter to Mr. D'Andrea which outlined the standard proffer procedure utilized by the U.S. Attorneys Office in dealing with plea discussions. Mr. D'Andrea then explained the proffer letter to the Defendant, noting that any statement provided to the U.S. Attorney for the purposes of evaluating the governments interest in offering a plea to the

---

5. This conclusion also disposes of the petitioners contention that the pre-sentence report was wrong. The reason is, assuming arguendo that the petitioner is correct in his assertion that he has only pled guilty to a conspiracy to deliver methamphetamine charge in Bradford county, that charge alone would establish a predicate offense for the purpose of the Armed Career Criminal Act.

Defendant, could not be used against the Defendant during the governments case in chief. However, it was also explained that the statement could be used against the Defendant to impeach him at trial [6].

■ The Defendant then provided Agent Noonan with a statement on his own free will. (Doc. 91). The statement led to the government's plea agreement offer which, if accepted, would have required the Defendant to plead guilty to two charges, the government to move for dismissal of the remaining four charges after sentencing, and the possibility of the government recommending that the Court depart below the guideline range and/or statutory mandatory minimum at sentencing. (Doc. 91). In addition, the plea agreement would have reduced the Defendant's mandatory minimum by 5 years and possibly more if the government made a motion for a downward departure. In total, the Defendant's sentence could have been potentially reduced from a 20 year mandatory minimum to one of 15 years or less. (Doc. 91). However, the Defendant refused the proposed plea agreement.

In light of the above facts, we find that the Defendant has failed to show that Mr. D'Andreas performance fell below an objective standard of reasonableness. In addition, although the statement was used to impeach the Defendant at trial, the Defendant has not shown that its use prejudiced his defense. Thus, the Defendants claim of ineffective assistance of counsel will be denied.

### 4. Bailey Challenge

Lastly, the Defendant challenges his conviction under 18 U.S.C. § 924(c)(1), which imposes a 5 year minimum term of imprisonment for any person who "during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm." The Defendant argues that his conviction was inconsistent with the holding of *Bailey v. U.S.*, in that *Bailey* precludes a

finding that he had "used" the firearm in relation to a drug trafficking offense. (Doc. 84).

On, December 6, 1995, the Supreme Court decided *Bailey* which defined the term "use" as it is employed in 18 U.S.C. § 924(c)(1). *Bailey v. U.S.*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). The Supreme Court stated that to establish "use" under § 924(c)(1) "requires evidence sufficient to show active employment of the firearm by the Defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Id.* at 505. As the Supreme Court explained, active employment of a firearm includes "brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." *Id.* at 508.

Here, the Defendant did not "use" the firearm as defined under *Bailey* when the gun was stored in the glove compartment of his truck. However, the Supreme Court also stated:

> While it is undeniable that the active-employment reading of use restricts the scope of § 924(c)(1), the Government often has other means available to charge offenders who mix guns and drugs. The carry prong of § 924(c)(1), for example, brings some offenders who would not satisfy the use prong within the reach of the statute.

*Bailey*, 116 S.Ct. at 509.

Here, the "carry" prong has brought the Defendant within the reach of 18 U.S.C. § 924(c). In *U.S. v. Cardenas*, the court held that "when a motor vehicle is used, [as here], carrying a weapon takes on a less restrictive meaning than carrying on the person." *U.S. v. Cardenas*, 864 F.2d 1528, 1535 (10th Cir.1989). The court reasoned that the "means of carrying is the vehicle, itself, rather than the Defendants hands or pockets." *Id.* at 1535–1536. In addition, both pre and post *Bailey* decisions have supported the conclusion that transporting a firearm in the

---

6. The Statement was used to impeach the Defendant at trial. The statement attacked the Defendants method of payment, time of payment, and quantity of methamphetamine purchased. However, at this point in the trial the Defendant had already admitted the he "would take the meth-amphetamine on consignment, use some, sell some and then pay him back." (Trial Transcript, Vol. II at 16–17). Therefore, even if counsel erred in allowing the Defendant to provide the statement to the FBI, the governments limited use of it did not effect the outcome of the trial.

passenger compartment of a vehicle during and in relation to a drug trafficking offense satisfies the carry prong of section 924(c). *U.S. v. Freisinger*, 937 F.2d 383, 387 (8th Cir.1991)(holding that transporting a firearm in the passenger compartment of a vehicle satisfies the carry prong of section 924(c); *U.S. v. Farris*, 77 F.3d 391, 395–96 (11th Cir.1996)(holding that transporting a firearm in the glove compartment of a drug-laden car was sufficient to satisfy the carry prong of section 924(c)); *see also U.S. v. Baker*, 78 F.3d 1241, 1247 (7th Cir.1996)(holding possession of a firearm coupled with the affirmative act of transporting it supported a section 924(c) conviction).

■ Thus, here, notwithstanding the *Bailey* Courts analysis of the "use" prong of § 924(c), the "carry" prong of § 924(c) has brought the Defendant within the reach of the statute when a firearm was found in the glove compartment of the Defendants truck during and in relation to a drug trafficking crime. Therefore, the facts satisfy the imposition of a 5 year minimum term of imprisonment in that the Defendant "carried" a firearm in relation to a drug trafficking offense. As such, his challenge to his conviction based upon the reasoning of *Bailey* is unavailing.

### Conclusion

For the reasons set forth above, the Defendants habeas corpus motion pursuant to § 2255 will be denied because the Defendant has failed to demonstrate that he is entitled to any relief.

### ORDER

NOW, this 7th DAY of November, 1997, it is hereby ORDERED that:

1. For the reasons set forth in the Memorandum, the Defendants habeas corpus motion (Doc. 84) pursuant to § 2255 is denied because the Defendant has failed to demonstrate that he is entitled to any relief.

2. Defense Counsels motion for permission to withdraw as counsel and to have substitute counsel appointed (Doc. 93) is denied.

3. The Clerk of Courts is directed to close the case file.

4. Any appeal from this Order will be deemed frivolous, without probable cause, and not taken in good faith.