UNITED STATES of America, Plaintiff–Appellee,

v.

Jeffrey Dewayne ROACH, Defendant–Appellant.

No. 91–5815.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 19, 1992.

Decided March 5, 1992.

Guy W. Blackwell, Asst. U.S. Atty. (argued), Sarah R. Shults, Asst. U.S. Atty. (briefed), Office of the U.S. Atty., Greeneville, Tenn., for U.S.

Jerry W. Laughlin (argued and briefed), Rogers, Laughlin, Nunnally & Hood, Greeneville, Tenn., for Roach.

Before MARTIN and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Defendant-appellant, Jeffrey Dewayne Roach, appeals his conviction and sentence for unlawful possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e)(1) and unlawful possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

## I.

On March 2, 1990, Tennessee Highway Patrolman William E. Tate responded to a call from his dispatcher to investigate an accident occurring on Buffalo Road in Grainger County, Tennessee. Upon arrival at the scene of the accident, Officer Tate found that there was a 1978 Buick automobile on the shoulder of the road against some trees in a wrecked condition. He found two individuals in the car, both of whom were drunk. Officer Tate arrested both individuals for public drunkenness, and questioned the male, Mr. Bishop, with regard to whether or not he had been the driver of the car. Mr. Bishop denied that he was the driver and told Officer Tate that Jeff Roach, the appellant herein, had been driving the car. He also told Officer Tate that Roach had run off from the accident scene. At this point, Officer Tate became aware appellant was near by and was fleeing. Officer Tate left the two persons he had found in the car with ambulance attendants and began to pursue Roach on foot. Officer Tate saw a person that he believed to be appellant walking toward a ridge, but by this time he was approximately a quarter of a mile away.

Tate was able to identify him as having on a green vest or green coat and blue jeans, but then Tate lost sight of him as he went over a ridge toward Highway 92. Tate then went back to his vehicle and called Grainger County officials for help. He also stopped at various stores and gave the description of the fleeing person, whom he believed to be Jeff Roach, the driver of the car. Coincidentally, Officer Tate lived close to where this accident occurred. One of the persons to whom he gave the description of appellant was his wife.

Officer Tate then took the two intoxicated passengers of the car to the Grainger County Sheriff's Office and was in the process of booking them when his wife called to report that she had seen a person, who fit the description of appellant, walking past their house, carrying a shotgun. Upon receiving this information and realizing that appellant was walking south on Highway 92 toward the Cherokee Dam, Officer Tate called Officer Davis, a TVA Public Safety Officer. Officer Tate gave Davis information about appellant's description and alerted him to the fact that he had a shotgun. He asked Officer Davis to hold the person for him if he was able to apprehend him.

TVA Public Safety Officer Davis got into his vehicle and proceeded onto Highway 92 to look for appellant, a white male, walking on Highway 92 and carrying a shotgun, wearing a green vest and blue jeans. Shortly thereafter, Davis saw a person meeting appellant's description and carrying what appeared to be a sawed-off shotgun. Officer Davis testified that the shotgun was open and that it was unloaded, but that it was obvious to him that it was an altered sawed-off shotgun, the possession of which is illegal.

Officer Davis stopped appellant and radioed for help. He then took the shotgun away from him, told him to put his hands on the car, and proceeded to pat him down. In patting him down, Officer Davis found a Derringer pistol, ammunition for the shotgun and pistol, and two knives. He noticed the odor of alcohol on Roach's breath.

Shortly thereafter, Officer Tate arrived, at which time a strip search of appellant was conducted. After being advised of his *Miranda* rights, appellant was transported to jail where Officer Tate booked him for driving under the influence of an intoxicant, leaving the scene of an accident, and no driver's license. He was also booked for possession of a firearm with intent to go armed. These charges were later dismissed in favor of federal prosecution under 18 U.S.C. § 922(g)(1), which makes appellant's possession of the firearms and ammunition illegal because appellant had prior felony convictions.

Appellant was charged in a three-count indictment. Count one of the indictment charged him with possessing a Mississippi Derringer, .22–caliber revolver and a Cherokee 75, 12–gauge, sawed-off shotgun; count two charged appellant with possession of ten rounds of ammunition for the sawed-off shotgun; and count three of the indictment charged him with possession of three rounds of .22–caliber ammunition for the Derringer pistol. All counts of the indictment alleged violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

In addition, the government gave notice of its intention to seek an enhancement of appellant's sentence, if convicted, on the basis of section 924(e) of the Armed Career Criminal Act (ACCA). 18 U.S.C. § 924(e)(1). This statute provides an enhanced sentence for violation of this offense for those individuals who have had three previous convictions for a violent felony or serious drug offense. In the notice filed by the United States, it was alleged that Mr. Roach met the criteria of section 924(e), because he had four prior felony convictions which should be counted against him.

On February 6, 1991, appellant filed a motion to suppress the evidence seized as a result of the stop and frisk by Officer Davis. On February 28, 1991, a United States Magistrate recommended that the motion to suppress be denied. In an order entered on March 29, 1991, the district court denied the motion, adopting the Magistrate's Report and Recommendation.

The case proceeded to trial and appellant was found guilty on each of the three counts of the indictment.

On June 21, 1991, a sentencing hearing was held at which time the district court concluded that appellant was subject to the enhanced punishment provided by 18 U.S.C. § 924(e), because he had four prior felony convictions either for a violent felony or a serious drug offense.

Appellant timely filed this appeal.

## II.

This court must first decide whether the district court erred in denying appellant's motion to suppress. Appellant argues that the detention and search of himself by Officer Davis does not meet the criteria for a permissible "stop and frisk" under the Fourth Amendment.

■ There is no merit to this argument. The detention and search of appellant is authorized by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which permits a "stop and frisk" by police where the police officer's stop is based on specific, articulable facts indicating reasonable suspicion that a crime has been committed. *Id.* at 26, 88 S.Ct. at 1882. Once a lawful stop pursuant to the *Terry* doctrine occurs, a frisk or partial search, consisting of a police officer's "pat-down" of a person's outer garments, is permissible where it appears from the facts known to the officer that there is a reasonable likelihood that the restrained individual is armed and the officer's safety is in jeopardy. *Id.* at 28, 88 S.Ct. at 1883. In the present case, Officer Davis observed a man walking along the side of a highway carrying what appeared to him to be a sawed-off shotgun or illegal firearm. The United States argues that because appellant was carrying an altered gun, this fact alone was sufficient reason for Officer Davis to conduct the stop and that this reasoning applies even though the shotgun appeared to be unloaded. We agree. *Terry* clearly holds that a brief stop of a suspicious individual to determine his identity or maintain the status quo momentarily, while obtaining more information, is permissible. 392 U.S.

at 21–22, 88 S.Ct. at 1879–80. Even if the gun were unloaded, possession of an altered shotgun in itself is a violation of the law and provides reasonable suspicion that a crime has been committed. "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams*, 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).

■ In addition to his personal observation of appellant's behavior, Officer Davis had received word that Tennessee Highway Patrolman Tate was looking for a person who matched Roach's description in the vicinity of Highway 92. Based on all the information available to Officer Davis, we believe his stop of appellant was justified. In *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), the United States Supreme Court held:

> Assuming the police make a *Terry* stop in objective reliance on a flier or bulletin, we hold that the evidence uncovered in the course of the stop is admissible if the police who issued the flier or bulletin possessed a reasonable suspicion justifying a stop ... and if the stop that in fact occurred was not significantly more intrusive than would have been permitted the issuing department.

*Id.* 469 U.S. at 233, 105 S.Ct. at 682.

We believe that Officer Tate, as the officer who issued the bulletin on Roach, meets the *Hensley* test. Based on his personal observations of the wrecked car, its intoxicated occupants, and of the man who fled from the scene of the accident, and on the information from the car's occupants that Mr. Roach was the driver, Tate possessed reasonable suspicion that Roach had acted unlawfully and had a proper basis for issuing a bulletin to other officers to be on the lookout for Roach. Therefore, Officer Davis had the authority to make a *Terry* stop of appellant based on his objective reliance on the information he had received from Officer Tate.

■ After detaining Roach, Officer Davis clearly had a basis to believe that there was a reasonable likelihood that Mr. Roach was armed and that his safety was in jeopardy, which would justify a "pat-down" search for weapons. The appellant was carrying an altered shotgun, indicating a need to be armed and that he might be in possession of other weapons. Moreover, appellant was fleeing from the scene of an accident and was thought to be intoxicated, indicating that his behavior could be desperate and unpredictable. The Supreme Court has held that when officers receive specific information indicating that a person has a weapon, there is justification for a "pat-down" search. *See Adams v. Williams*, 407 U.S. at 147–48, 92 S.Ct. at 1924.

To conclude, Officer Davis had a reasonable, articulable suspicion justifying a stop of appellant to determine his identity and he was justified in conducting a "pat-down" search of appellant in order to protect himself. Once the stop and frisk uncovered additional evidence of a crime, Officer Davis had probable cause to arrest Roach. For these reasons, the district court properly denied the motion to suppress.

### III.

■ We must next decide whether the district court erred in finding that appellant's three prior drug convictions were not a single criminal episode.

Appellant contends that the district court erred in enhancing his sentence under the provisions of the Armed Career Criminal Act (ACCA). The ACCA establishes an enhanced minimum penalty of 15 years imprisonment for a person who: (a) violates 18 U.S.C. § 922(g), prohibiting receipt or possession of firearms by felons and other designated classes of persons, and (b) "has three previous convictions by any court ... for a violent felony or a serious drug offense, or both [i.e., for predicate offenses], committed on occasions different from one another." 18 U.S.C. § 924(e)(1).

The four prior convictions for a violent felony or serious drug offense on which the

United States relied for Roach's sentence enhancement were as follows:

1. November 14, 1987, Criminal Court of Hamblen County, Tennessee, aggravated assault;
2. July 6, 1981, Criminal Court of Hamblen County, Tennessee, selling Schedule II controlled substances, committed on March 11, 1981;
3. July 6, 1981, Criminal Court of Hamblen County, Tennessee, possession of Schedule II controlled substances with intent to sell, committed on March 12, 1981;
4. July 6, 1981, Criminal Court of Hamblen County, Tennessee, selling Schedule II controlled substances, committed on March 26, 1981.

The district court found that defendant had one prior conviction for a violent felony (# 1 above) and three prior convictions for serious drug offenses (# 2–4 above), because methaqualone, which is the drug appellant sold, is a Schedule II controlled substance.

Defendant argues that the three drug convictions he received on July 6, 1981 should be treated as one single conviction instead of three separate convictions. Specifically, he argues that all of the convictions occurred on the same date and stemmed from the same indictment. He also argues that two of them resulted from the sale to the same undercover agent. According to appellant, these convictions, thus, were a result of a "single criminal episode." The government argues that the relevant factor for determining the number of predicate offenses under the ACCA is not the date of conviction for those predicate offenses, but the date that the defendant committed the offense for which he is subsequently convicted.

We agree. The Sixth Circuit has recently decided not to require that a defendant be convicted for his first predicate offense before he has been convicted for his second and then third predicate offense in order for enhancement. In other words, the language of section 924(e)(1) does not require that a defendant's three criminal predicate offenses be punctuated by intervening con-

**684**

victions. *United States v. Hughes*, 924 F.2d 1354, 1361 (6th Cir.1991). This court in *Hughes* held that Congress intended section 924(e) to enhance punishment for multiple criminal episodes that are distinct in time. *Id.* The *Hughes* court defined "episode" as "an incident that is part of a series, but forms a separate unit within the whole. Although related to the entire course of events, an episode is a punctuated occurrence with a limited duration." *Id.* In *Hughes*, the defendant made an argument similar to that of appellant in the present case that the drug raids resulting in his conviction for conspiracy constituted a single criminal episode because, although they occurred on different days, they occurred at the same residence and involved the same type of controlled substances. The *Hughes* court rejected this argument, holding that because the drug raids occurred at distinct times during a nine-month period, they constituted three separate predicate offenses warranting enhancement under § 924(e). *Id.*

■ Appellant argues that the present case is distinguishable from *Hughes* because of the short time-period of fifteen days between the three drug sales that formed his predicate offenses. He contends that this short time-period indicates that he was involved in a single episode, not multiple episodes, of criminal conduct. This argument is to no avail.

Section 924(e) specifies that the prior offenses should have been "committed on occasions different from one another." The majority of courts have concluded that if the predicate offenses occurred on occasions different from one another, Congress intended that they not be regarded as a "single criminal episode." *See United States v. Washington*, 898 F.2d 439, 442 (5th Cir.) (robbery of same store and same victim twice within five hours counted as two criminal episodes under 924(e)), *cert. denied*, — U.S. —, 111 S.Ct. 122, 112 L.Ed.2d 91 (1990); *United States v. Gillies*, 851 F.2d 492, 497 (1st Cir.) (burglary at same house on different nights constituted two criminal episodes for purpose of 924(e)), *cert. denied*, 488 U.S. 857, 109 S.Ct.

147, 102 L.Ed.2d 119 (1988); *United States v. Herbert*, 860 F.2d 620, 622 (5th Cir.1988) (two burglaries on different days were distinct criminal transactions for purpose of 924(e)), *cert. denied*, 490 U.S. 1070, 109 S.Ct. 2074, 104 L.Ed.2d 639 (1989); *United States v. Wicks*, 833 F.2d 192, 194 (9th Cir.1987) (per curiam) (two burglaries on same day at different locations were two offenses for purpose of 924(e)), *cert. denied*, 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988). Because appellant committed drug offenses on three different days (March 11th, 12th, and 26th), these offenses do not constitute a single criminal episode, and the district court properly enhanced appellant's sentence pursuant to 18. U.S.C. § 924(e)(1) because he had four prior felony convictions for either a violent felony or serious drug offense.

For these reasons, the judgment of the district court is hereby AFFIRMED.