25 F.3d 1051
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellant,
v.
Grant GODDARD, Jr., Defendant-Appellant.
 No. 93-1823.
 United States Court of Appeals, Sixth Circuit.
 May 11, 1994.
 
 Before: MILBURN and GUY, Circuit Judges; and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant, Grant Goddard, Jr., was convicted of being a felon in possession of a firearm and ammunition and possessing identifying documents without lawful authority, in violation of 18 U.S.C. Secs. 922(g)(1) and 1028(a)(6), respectively. On appeal, he argues that his sentence was improperly enhanced pursuant to 18 U.S.C. Sec. 924(e) and that prejudicial statements made by the government deprived him of a fair trial. He further contends that the district court erred by admitting evidence of crimes for which he was not charged and by allowing the government to allege that he had committed more than one prior felony for purposes of proving his felon-in-possession charge. For the following reasons, we affirm.
 
 I.
 
 2
 In September 1992, the FBI began investigating defendant. The FBI had been alerted to Goddard by a confidential informant, who told the agency that Goddard was storing firearms and ammunition. The investigation culminated on December 10, 1992, when FBI agents executed search warrants for Goddard's residence and automobiles. Immediately prior to conducting the search, Special Agent David Marthaler briefed the other authorities involved as to Goddard's appearance, the layout of his house, and his propensity for "hid[ing] items in very unique places." (App. 188.)
 
 
 3
 As it turned out, Marthaler's comments proved prophetic, for the agents uncovered a .45 caliber pistol embedded within a bag of cat litter in Goddard's utility room. The pistol was found covered by a red rag that had been wrapped with green duct tape.[1] The search also yielded a box of .45 caliber ammunition (found under the driver's seat of Goddard's car); ammunition cartridges and a gun cleaning kit (found in Goddard's father's bedroom);[2] and a briefcase containing various documents (found in Goddard's bedroom). Among these documents were an honorable discharge certificate from the United States Marine Corps made out in the name of "Gerald Henery Soddard," an insurance policy issued to Soddard, an "employment verification request sheet" bearing Soddard's name, and a sheet of notebook paper on which Goddard apparently had written his name alongside the various aliases (including Soddard) he had adopted.[3] In addition, the briefcase contained a State of Michigan birth certificate that evidently had been altered to signify Soddard's birth on June 6, 1935.
 
 
 4
 As a result of the search, Goddard was arrested and questioned. Although he denied knowing about the pistol in the utility room and the ammunition found in his car, he did acknowledge that nobody else but he changed the cat litter box and that he had neither lent his car nor carried any passengers recently. Eventually, Goddard was tried on an information charging him with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. Sec. 922(g)(1), and with possessing an identifying document of the United States without lawful authority, in violation of 18 U.S.C. Sec. 1028(a)(6).
 
 
 5
 At trial, one of Goddard's sons, Dennis Goddard, testified that he had sold his father the pistol in question in "[a] parking lot in Phoenix, Arizona" approximately "[s]even [to] eight years ago." (App. 94, 95.) Dennis Goddard also recalled that his father had been convicted sometime during the late 1960s for his involvement in a bank robbery and that his father had gone by the name "Gerald Soddard" for a period of time while they were both living in Arizona.
 
 
 6
 In his defense, Goddard called as witnesses several people that were at the time or had once been family members. For instance, his father testified that he, not his son, was actually the true owner of the pistol. In addition, another one of Goddard's sons, Donald, claimed that his twin brother, Ronald--evidently motivated by animus--had attempted to "set up" Goddard for a weapons conviction. Veronica Clark, Goddard's former wife, also testified, stating that the FBI had threatened her in an effort to secure her cooperation in the investigation. Clark also confirmed that Goddard's relationship with Ronald left much to be desired.
 
 
 7
 The jury subsequently found Goddard guilty on both counts. On June 10, 1993, Goddard was sentenced as an armed career criminal. He received concurrent terms of imprisonment of 220 months and 60 months for his firearm and false identification offenses, respectively.[4] This appeal followed.
 
 II.
 A.
 
 8
 Goddard first assigns error to the district court's decision to enhance his sentence pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. Sec. 924(e)(1), which provides for a sentence enhancement "for those individuals who have had three previous convictions for a violent felony or serious drug offense." United States v. Roach, 958 F.2d 679, 681 (6th Cir.), cert. denied, 113 S.Ct. 135 (1992). Specifically, Goddard claims that he was not given proper notice that the government would seek a Sec. 924(e)(1) enhancement and that, in any event, his prior convictions cannot be deemed violent felonies within the meaning of the statute.
 
 
 9
 As to the former claim, Goddard maintains that the notice he was given by the government's March 1, 1993, "Notice Specifying Grant Goddard, Jr., As an Armed Career Criminal" ("March 1 notice") was lacking in detail. He adds, without citing authority, that "[t]he necessary detail must include the date of each conviction, the court in which the conviction occurred, the statute that the defendant was convicted under, and the case number or file number." (Appellant's Brief at 15.) Although we certainly recognize the benefit, from a defendant's perspective, of requiring these proposed details to be set forth by the government in a formal notice pleading, we reject Goddard's assertion that, in this instance, the notice he received was inadequate. As the government correctly observes, Goddard simply could have referred to his superseding indictment to determine more about the predicate convictions relied upon by the government. This superseding indictment, returned on January 14, 1993, listed the dates and courts of conviction as well as the relevant statutory sections.[5] A review of the entire record, not just the government's March 1 notice, thus convinces us that Goddard's claim of insufficient notice is without merit.
 
 
 10
 Turning to Goddard's assertion that he does not have the three previous felony convictions necessary to trigger the application of Sec. 924(e)(1), we conclude that, here too, Goddard's argument must fail. Goddard takes issue with several of the predicate felonies relied upon by the government. For instance, while Goddard concedes that his conviction for aiding and abetting armed bank robbery counts as a predicate felony, he argues that this conviction and his conviction for conspiracy to commit armed bank robbery cannot be counted as two separate offenses because the government failed to demonstrate, either in its March 1 notice or during the sentencing hearing, that they arose out of different criminal episodes. See United States v. Taylor, 882 F.2d 1018, 1029 (6th Cir.1989) (prohibiting "double-counting of multiple convictions arising from a single episode of criminal conduct."), cert. denied, 496 U.S. 907 (1990). Again, however, a close analysis of the record--and, in particular, the presentence report--reveals that the convictions in question were, indeed, the result of two separate incidents that occurred in the fall of 1965.
 
 
 11
 In the alternative, Goddard contends that, even if the above convictions constitute distinct offenses, conspiracy is not a violent felony as defined by the ACCA. After all, it is urged, conspiracies merely entail agreements to undertake unlawful acts; they do not, therefore, "necessarily present circumstances which create [a] high risk of violent confrontation...." United States v. King, 979 F.2d 801, 804 (10th Cir.1992) (quoting United States v. Strahl, 958 F.2d 980, 986 (10th Cir.1992) (holding that attempted burglary is not a violent felony for purposes of Sec. 924(e))).[6]
 
 
 12
 We begin, of course, with the language of the statute. The term "violent felony" is defined in 18 U.S.C. Sec. 924(e)(2)(B), which states:
 
 
 13
 (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--
 
 
 14
 (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
 
 
 15
 (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]
 
 
 16
 Although Sec. 924(e)(2)(B) thus does not, by its own terms, resolve the question of whether a given conspiracy offense can be deemed a violent felony, the Supreme Court has established an analytical framework to guide courts in this regard. See Taylor v. United States, 495 U.S. 575 (1990). In Taylor, the Court instructed that a categorical, as opposed to case-by-case, approach should be used to determine whether an offense meets the Sec. 924(e) definition of a violent felony. "Under such an approach, an inquiring tribunal 'look[s] only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions.' " United States v. Fiore, 983 F.2d 1, 3 (1st Cir.1992) (holding that a conviction for conspiracy to break and enter a commercial structure constitutes a predicate offense for purposes of the career offender provisions of the federal sentencing guidelines), cert. denied, 113 S.Ct. 1830 (1993).
 
 
 17
 Far from challenging the applicability of the Court's categorical approach, Goddard contends that, when applied to a conspiracy case, the approach actually supports his position. In Fiore, however, the First Circuit considered and rejected a similar argument, stating:
 
 
 18
 Appellant suggests that, because some conspiracy convictions will not be predicate offenses--for example, a conspiracy to barter migratory birds or to sell forged securities ...--Taylor's categorical approach requires a finding that all conspiracy convictions are exempt from "predicate offense" treatment. While we recognize that this suggestion offers a certain seductive simplicity, we think that it twists Taylor's message. The Taylor Court understood the categorical approach as one designed "to capture all offenses of a certain level of seriousness that involve violence or an inherent risk thereof, and that are likely to be committed by career offenders." To implement this objective in the present context, it is not enough to focus on the word "conspiracy" alone, for that superficial label says next to nothing about the underlying nature of the crime and, therefore, about whether it should be classified as a crime of violence or a controlled substance offense. Instead, one must ask, and answer, the more specific question "conspiracy to do what?" in order to implement Taylor. After all, a conspiracy, not unlike a chameleon, will necessarily take on the characteristics and coloration of its environment. The object of the conspiracy is, therefore, a critical determinant.
 
 
 19
 983 F.2d at 3 (citation omitted); see also United States v. Preston, 910 F.2d 81, 86-87 (3d Cir.1990) ("[W]e think that a sentencing court can go beyond the general elements of criminal conspiracy in situations such as this where the jury was required to find that a violent felony was the object of the conspiracy."), cert. denied, 498 U.S. 1103 (1991).
 
 
 20
 We are persuaded by the Fiore court's construction of Taylor[7] and therefore reject the assertion that, as a generic matter, conspiracies cannot be characterized as violent felonies within the meaning of Sec. 924(e). Cf. United States v. Lane, 909 F.2d 895, 903 (6th Cir.1990) (holding that the defendant's conviction for attempt to commit a violent felony (burglary) satisfied the requirements of Sec. 924), cert. denied, 498 U.S. 1093 (1991). The question remains, however, whether the particular conspiracy in dispute here rises to the level of a violent felony. We conclude that it does. Put simply, to suggest that conspiring to commit armed bank robbery does not "involve[ ] conduct that presents a serious potential risk of physical injury to another" plainly flies in the face of reason.[8] 18 U.S.C. Sec. 924(e)(2)(B)(ii). See United States v. Adkins, 937 F.2d 947, 950 n. 2 (4th Cir.1991) ("Armed bank robbery is unquestionably a crime of violence, because it 'has as an element the use, attempted use, or threatened use of physical force against the person ... of another.' ").
 
 
 21
 Goddard also contends that, under Taylor, his conviction for attempted breaking and entering of an unoccupied building, see Mich.Comp.Laws Ann. Sec. 750.110, is not a Sec. 924 violent felony. Our review of this argument, however, is foreclosed by our decision in United States v. Fish, 928 F.2d 185 (6th Cir.) (relying on Lane and upholding the defendant's enhancement), cert. denied, 112 S.Ct. 115 (1991). We are bound by our prior decision on the matter.[9]
 
 
 22
 To summarize, Goddard's convictions for (1) aiding and abetting armed bank robbery, (2) conspiracy to commit armed bank robbery, and (3) attempted breaking and entering of an unoccupied building each constitute a "violent felony" as that term is defined by the ACCA. Because Goddard thus has to his credit the three prior violent felony convictions needed to enhance his sentence under Sec. 924(e)(1), we do not consider whether Goddard's conviction for unlawfully possessing a firearm, 18 U.S.C. Sec. 922(g), also meets the statutory definition of a violent felony.
 
 B.
 
 23
 Next, Goddard argues that his trial was fundamentally unfair because the district court admitted evidence of uncharged crimes without requiring that the government articulate a basis for the admissions. Rule 404(b) of the Federal Rules of Evidence provides:
 
 
 24
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.
 
 
 25
 In particular, Goddard takes issue with the admission of the following testimony of Agent Joseph Johnson relating to the location of Goddard's pistol:[10]
 
 
 26
 Q. Was there some bulge that made you suspicious or something about the kitty litter bag's appearance that made you put your hand into a bag of kitty litter?
 
 
 27
 A. No, there had been information presented to me by Agent Marthaler.
 
 
 28
 Q. In general, can you tell me in a general way what the information was that you had received from Marthaler that caused you to reach into the bag of kitty litter?
 
 
 29
 A. Information gathered by Marthaler, Agent Marthaler, through investigation revealed that the defendant had a knack or tendency to hide items such as weapons in unique places such as heating registers, duct work, the bags in vacuum cleaners, hidden compartments in walls, things of that nature.
 
 
 30
 (App.153.)
 
 
 31
 Notwithstanding Goddard's assertions, Rule 404(b) is not implicated here, for the disputed evidence does not satisfy the prerequisites to the rule's applicability. In other words, the instances cited by Goddard (including the above kitty litter testimony) do not, for the most part, constitute evidence of other uncharged bad acts; and to the extent they do, they were offered for a purpose other than to establish Goddard's propensity to commit the crimes for which he was indicted.[11] In fact, the evidence Goddard complains of either went to proving the crimes charged in the indictment or to impeaching defense witnesses. Goddard's Rule 404(b) argument must therefore fail.
 
 C.
 
 32
 Goddard argues the district court further erred by allowing the government to allege that he had committed five prior felonies that could serve as predicates for his felon-in-possession charge. Although Goddard acknowledges that his argument is contrary to established precedent within this circuit, see, e.g., United States v. Ford, 872 F.2d 1231, 1238 (6th Cir.1989), cert. denied, 495 U.S. 918 (1990); United States v. Burkhart, 545 F.2d 14, 15 (6th Cir.1976), he nevertheless asks this court to revisit (and overrule) our prior rulings. We decline to do so and, instead, reaffirm our well-settled law on the matter.
 
 
 33
 In addition, Goddard contests the manner in which the government attempted to prove his prior felonies. In this regard, he maintains that the government could not properly prove his felonies through the "particularly unfairly prejudicial" testimony of retired police officer Raymond Knuth and Dennis Goddard. Knuth and Dennis Goddard testified to two of Goddard's prior convictions. Goddard argues that instead of eliciting this testimony the government should have submitted certified copies of the convictions in question. The district court was well aware of Goddard's concerns, acknowledging that Knuth's and Dennis Goddard's testimony presented a threat of prejudice. The court, however, refused to "cut[ ] off the government's proofs on that basis[,]" stating:
 
 
 34
 I think [Goddard] would have a very good case for 403 prejudice and cumulativeness and so forth. However, I would not be prepared to so rule in the presence of the defense posture which would allow the limitation of government evidence and then an attack on the evidence that was presented.
 
 
 35
 (App. 242-43.) Knuth and Dennis Goddard were thus allowed to testify only because, to that point in the proceedings, Goddard had not stipulated to having been convicted of any prior felony. Once Goddard so stipulated, the court precluded the government from continuing to prove Goddard's felonies via witness testimony. While we agree that certified copies would have provided a more appropriate means of proving Goddard's prior felonies, we cannot conclude that, under the circumstances of this case, reversal is warranted.
 
 D.
 
 36
 Finally, Goddard contests comments made by the government during its closing argument. He claims that these comments unfairly prejudiced him and thereby deprived him of a fair trial.[12] Assertions of prosecutorial misconduct are judged according to the following standard: "The relevant question is whether the [misconduct] 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). "To warrant a new trial ... prosecutorial misconduct 'must be so pronounced and persistent that it permeate[s] the entire atmosphere of the trial.' " United States v. Mahar, 801 F.2d 1477, 1503 (6th Cir.1986) (quoting United States v. Thomas, 728 F.2d 313, 320 (6th Cir.1984)). Moreover, Goddard raised no objection to the government's remarks at trial. We therefore review his allegations only to determine whether the district court committed plain error. See Fed.R.Crim.P. 52(b); United States v. Causey, 834 F.2d 1277, 1281 (6th Cir.1987) ("Plain errors are limited to those harmful ones that are so rank that they should have been apparent to the trial judge without objection, or that strike at the fundamental fairness, honesty, or public reputation of the trial."), cert. denied, 486 U.S. 1034 (1988).
 
 
 37
 Finding no plain error here, we decline to set aside Goddard's conviction. Although the examples Goddard cites to bolster his argument may, in isolation, suggest some modicum of prosecutorial indiscretion, viewed in context, they were clearly either invited by defense counsel's own comments or not problematic in the first place. In any event, we cannot conclude that the government's allegedly prejudicial comments were "so pronounced and persistent that [they] permeate[d] the entire atmosphere of the trial." Mahar, 801 F.2d at 1503.
 
 
 38
 AFFIRMED.
 
 
 
 [1]
 A government witness would later determine that the duct tape used to wrap the pistol had come from a roll found in another part of the utility room
 
 
 [2]
 At trial, a government witness identified Goddard's fingerprints on a cartridge in the box of ammunition found in the car as well as on the gun cleaning kit recovered from Goddard's father's bedroom
 
 
 [3]
 At trial, Marthaler provided the following, more detailed account of the notations on the notebook paper:
 [The sheet is] handwritten and has the numeral 1 in brackets, next to that is the name Grant Goddard, Jr. birth date 6/14/27. Next to that is Social Security number kea-pf-szudand then the word original.
 Directly under that is Social Security number agr-ma-vbby and next to that Social Security number is the word present.
 Under that is four places that apparently this person worked for, and the dates.
 The second numeral has the name Grant Goddard, next to that is the word alias with a small arrow, and the name John R. Tallman, with a date of birth and Social Security number.
 The third numeral has the name Grant Goddard and directly beneath that is the name Gerald H. Soddard.
 Next to that name Gerald H. Soddard is the word alias.
 Underneath Gerald H. Soddard is the birth date of 10/3/32. Underneath that is Social Security number xit-hx-bzvb And next to that is the word worked for and then the address of Hall Management, Wickertree Apartments, Phoenix, Arizona.
 It gives a street address and also the dates that apparently this person worked at Wickertree Apartments.
 (App. 201-02.)
 
 
 [4]
 In arriving at this sentence, the court determined that Goddard had a total offense level of 33 and a criminal history category of IV, which, when combined, resulted in an imprisonment range of 188 to 235 months
 
 
 [5]
 Goddard's claim to insufficient notice is also belied by the fact that he stipulated to having committed five prior felonies punishable by imprisonment for a term of over one year. Goddard, it appears, had no difficulty identifying the felonies at issue, for he offered no objection to the stipulation. Moreover, Goddard's prodigious criminal history, including his various felonies, were discussed at even greater length in his presentence report
 
 
 [6]
 As the government remarks, the King court was not exactly enthusiastic in endorsing its holding. In fact, the court conceded that "[a] strong argument can be made that a conspiracy to commit a violent felony presents a serious potential risk of physical injury to another, and is therefore itself a 'violent felony' for purposes of 18 U.S.C. Sec. 924(e)." 979 F.2d at 803. Moreover, the court prefaced its conclusion by noting, in reference to its earlier decision in Strahl, that "[a]lthough we have not considered this precise issue previously, we do not write on a clean slate." Id. at 804
 
 
 [7]
 Fiore involved a sentence enhancement, not under the ACCA, but under U.S.S.G. Sec. 4B1.1. However, given the substantial similarity between the definitions for "violent felony" and "crime of violence" set forth in Sec. 924(e)(2)(B) and guidelines section 4B1.2(1), respectively, courts interpreting one phrase have found persuasive authority interpreting the other. See, e.g., United States v. DeJesus, 984 F.2d 21, 24 n. 6 (1st Cir.1993) (citing Fiore, 983 F.2d at 3 n. 2 and United States v. Bell, 966 F.2d 703, 705 (1st Cir.1992)); Preston, 910 F.2d at 86 n. 6
 
 
 [8]
 In this sense, the instant case can be distinguished from United States v. Mack, 8 F.3d 1109 (6th Cir.1993). In Mack, we held that the crime of sexual battery as defined by Ohio law, Ohio Rev.Code Sec. 2907.03, is not a violent felony because it does not necessarily involve "the use, attempted use, or threatened use of force. Rather, the crime is complete upon using any coercive means to induce the victim to engage in sexual conduct with the perpetrator. Coercion may, but need not, involve force." 8 F.3d at 1112 (emphasis added)
 
 
 [9]
 Goddard's claim that the Fish court held only that the attempted breaking and entering of an occupied building in Michigan constitutes a violent felony is unavailing. Our reading of Fish convinces us that its holding clearly extends to the attempted breaking and entering of unoccupied buildings as well
 
 
 [10]
 In total, Goddard lists nine examples of "other acts" evidence that should not have been admitted under Rule 404(b):
 
 
 [1]
 Defendant had "a propensity for hiding weapons in strange places";
 
 
 [2]
 The gun was fully loaded with the hammer pulled back;
 
 
 [3]
 Defendant's arrest for the Weismuller murder occurred while he was being held on other charges by federal authorities;
 
 
 [4]
 Defendant used many aliases and he was impersonating "a retired military person;"
 
 
 [5]
 The FBI used fingerprint cards from prior offenses, also with aliases on them;
 
 
 [6]
 The briefcase contained many other items of false identification in addition to the discharge certificate;
 
 
 [7]
 Defendant's son told the FBI that Defendant was a lifelong criminal who always possessed guns;
 
 
 [8]
 Defendant's father lost the $10,000 he posted for bail when Defendant failed to show up in court;
 
 
 [9]
 Defendant's father was convicted of harboring a fugitive, who was Defendant
 (Appellant's Brief at 25-26.)
 
 
 [11]
 Moreover, at trial Goddard failed to object to the admission of much of the evidence in question. Were we to engage in a Rule 404(b) analysis, therefore, our review largely would be limited to a search for plain error. See United States v. Young, 470 U.S. 1, 15 (1985). We further note that the harm Rule 404(b) was meant to prevent is implicated to a lesser extent in felon-in-possession cases than in cases in which the defendant's prior criminal history is irrelevant. A felon-in-possession charge presupposes that the defendant in question has committed prior "bad acts." Thus, the very nature of the charge puts the jury on notice as to the defendant's pre-existing criminal record
 
 
 [12]
 Specifically, Goddard alleges that the government (1) mentioned his prior convictions to suggest that "he did it before and [therefore] he's done it again"; (2) characterized the hearsay statements of confidential informants as "absolutely right"; (3) "repeatedly referred to matters not in evidence"; and (4) emphasized the "entirely irrelevant" fact that Goddard's pistol was loaded and ready for quick use. (Appellant's Brief at 33, 35, 36.)