UNITED STATES of America,
Plaintiff–Appellee,

v.

Stephen SCOTT, Defendant–Appellant.

No. 99–6571.

United States Court of Appeals,
Sixth Circuit.

June 7, 2001.

---

Before KENNEDY,
SUHRHEINRICH; Circuit Judges,
GADOLA, District Judge.*

KENNEDY, Circuit Judge.

Defendant Stephen Scott appeals the district court's denial of his motion to suppress the products of a warrantless search conducted by police officers after stopping Scott's car. Scott claims the police did not have articulable facts to support a reasonable suspicion of criminal activity and therefore the evidence flowing from the stop was obtained in violation of the Fourth Amendment to the Constitution of the United States.

Because the officers articulated several reasons for conducting the stop based on their observations and the circumstances of their investigation, we affirm. A brief factual background precedes our analysis.

## I.

On March 30, 1999 at 3:32am, Lexington police officers Aaron Acuff and William Brislin arrived at 142 Rugby Road to investigate a complaint. According to the complainant, she observed a black male in the vicinity of the house located at 144 Rugby Road. She suspected the man was a prowler because an older woman lived at the house.

The officers found no prowler. They decided to check cars in the area to determine whether the prowler had broken into any of them or was hiding in or near one of them. During this search, they observed a firearm in the back seat of the car parked in front of 146 Rugby Road. The officers ran a check on the license plate of the car and discovered that it belonged to Teri Tillerson, for whom there is an outstanding arrest warrant. Believing Ms. Tillerson might be in the house at 146 Rugby Road, the officers proceeded to knock on the door. No one answered. While at the door, the officers noticed a silver Cadillac approach. It slowed in front of the house as though to pull into the driveway, but as it got closer sped up

* The Honorable Paul V. Gadola, United States District Judge for the Eastern District of     Michigan, sitting by designation.

and proceeded down the street, leaving the officer suspicious.

As a result, they decided to patrol the area. While patrolling, they came upon the silver Cadillac again and followed it from a distance. When the car came to 146 Rugby Road, it again slowed as though to turn into the driveway and then sped off. Suspecting Ms. Tillerson might be in the car or that the car may have come to pick up the prowler, the police flashed their car's lights at the Cadillac, signaling it to pull over. The Cadillac did so and the driver then held his hands out the window. That action caused the officers to believe that this was a high risk stop. Consequently, the officers asked the driver, defendant Scott, to step out of the car and walk towards the officers. There was a female in the front passenger seat of the car. In the course of their investigation, the officers noticed a strong scent of marijuana emanating from the Cadillac. The passenger in the car informed the officers that she too smelled it, and defendant stated that his brother may have smoked marijuana in the car earlier in the day. Based on those statements and the scent, the officers conducted a search of the vehicle which led to the discovery of cocaine, firearms, and weight scales presumably for measuring the cocaine.

Defendant was indicted on one count of possession with intent to distribute more than 50 grams of crack cocaine in violation 21 U.S.C. § 841(a)(1) and one count of carrying a firearm in relation to drug trafficking in violation of 18 U.S.C. § 924(c)(1). Defendant moved to suppress the evidence obtained from the stop and search on the grounds that (1) there was no reasonable suspicion of criminal activity and (2) there was no probable cause for the search. The district court denied the motion. Defendant subsequently pleaded guilty to count one, preserving his right to appeal the court's decision on the motion to suppress.

After sentencing, defendant filed this appeal.

## II.

On appeal defendant alleges the district court erred in ruling the officers articulated sufficient facts to support a reasonable suspicion of criminal activity. He concedes, however, that the officers had probable cause to search the car after detecting the scent of marijuana. In reviewing the district court's decision, we view the evidence in the light most favorable to the government. *See United States v. Garza,* 10 F.3d 1241, 1245 (6th Cir.1993). We accept the district court's findings of fact unless they are clearly erroneous. *See id.* And we review the district court's legal conclusions de novo. *See id.*

According to defendant, the officers could not have had a reasonable suspicion to stop defendant because (1) they did not have any information that linked Tillerson to defendant's car and (2) the area was not a high crime area. This left the officers, defendant claims, "with ... an observation that on the early morning hours in a residential neighborhood, Scott's car was seen twice, in a short period of time, slowing and then continuing on at a reasonable rate of speed in violation of no traffic ordinances." Appellant's Br. at 20–21. Therefore, he concludes, there was no reasonable suspicion. We disagree.

The Fourth Amendment protection against unreasonable seizures includes stops of one's car. *See Delaware v. Prosue,* 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). A police officer, however, "can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable

cause." *United States v. Sokolow,* 490 U.S. 1, 7–8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (citation omitted). In assessing whether the officers had a reasonable suspicion, we look at all the circumstances surrounding the actions of the suspected wrongdoer. *See Garza,* 10 F.3d at 1245.

Reviewing all the circumstances, we believe there were articulable facts that gave rise to a reasonable suspicion. The officers were investigating a complaint that a prowler was in the area—i.e., that criminal activity was afoot. Defendant's actions led them to suspect that he may have been there to pick up the prowler and chose not to stop once he realized the officers were in the area. Hence, there was reason to believe that defendant was engaged in the criminal activity. Because Ms. Tillerson's car was in front of the house and no one responded when the officers knocked on the door, moreover, it was also possible that she was in the Cadillac. Officers are permitted in such circumstances to stop an individual to determine his identity. *See United States v. Roach,* 958 F.2d 679, 682 (6th Cir.1992). In light of these facts, we find defendant's argument wanting.

Defendant also argues that once the officers patted down defendant and determined that he was not carrying a weapon and he had stated he did not know Tillerson, they should have ended the stop. "The scope of the activities permitted during the stop is determined by the circumstances that initially justified the stop. Thus, the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *United States v. Obasa,* 15 F.3d 603, 607 (6th Cir.1994) (citations omitted). That is what the officers were doing. Defendant's argument ignores the fact that defendant's passenger was a woman, who could have been Tillerson. The officers were permitted to determine whether she was. Furthermore, there is no indication from their testimony that the two events—speaking with defendant and determining who was in the passenger side of the car—were done at different times. Indeed, Officer Brislin testified that while he was speaking with defendant, Officer Acuff approached the car to determine whether anyone else—such as Tillerson—was in the car. The officers, moreover, were permitted to investigate whether defendant was related to the prowler complaint. Defendant's argument does not address this point.

### III.

For the foregoing reasons, we affirm the district court's denial of the motion to suppress.