NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0141n.06

**Case No. 15-5550**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 14, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee*, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| FLOYD DAVIS, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| *Defendant-Appellant*. | ) | |
| | ) | |
| | ) | O P I N I O N |

BEFORE:     COLE, Chief Judge; MERRITT and GRIFFIN, Circuit Judges.

COLE, Chief Judge.   Floyd Davis pleaded guilty to being a felon in possession of a firearm and was sentenced, as an armed career criminal, to 180 months' imprisonment.  Davis now appeals his mandatory minimum sentence, attacking the district court's decision on statutory and constitutional grounds.  Finding no error, we affirm.

I.

Davis possessed a stolen Glock 22 semi-automatic pistol, equipped with an extended 30-round clip.  In the early-morning hours of December 26, 2013, he used this gun to "sho[o]t out" the windows of a car in the parking lot of Terry's Lounge in Chattanooga, Tennessee, and then "r[an] towards the entrance" of the nightclub brandishing the weapon.  Fortunately for the

patrons, two of the club's security guards subdued Davis on arrival. Soon after, local police officers reached the scene and arrested Davis for reckless endangerment and vandalism.

This was not Davis's first run-in with the law. Almost six years prior to the shooting, in 2009, Davis had pleaded guilty in state court to four felony counts of selling cocaine. *See* Tenn. Code Ann. § 39–17–417. As a result, a federal grand jury indicted Davis in 2014 on two counts of being a felon in possession of a firearm and ammunition. *See* 18 U.S.C. § 922(g)(1). Roughly a year later, he pleaded guilty to the firearm charge via a written agreement.

Davis's case proceeded to sentencing. His base offense level of 30, *see* USSG §§ 2K2.1, 3E1.1, 4B1.4, coupled with a criminal history category of V, *see* USSG §§ 4A1.1, 4A1.2, 4B1.4, produced an advisory guidelines range of 151 to 188 months' imprisonment, *see* USSG Ch. 5, Pt. A. Davis was also subject to a 180-month mandatory minimum sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e), because of his previous felony drug convictions. This became the low end of his guidelines range. *See* USSG § 5G1.1.

Davis objected to the armed career criminal designation. At sentencing, Davis's counsel argued that the predicate "serious drug offenses" were not committed "on occasions different from one another." *See* 18 U.S.C. § 924(e)(1). The claim was that his underlying offenses were part of a single course of conduct since Davis did not get arrested "between each [criminal] act." The government, relying on the state judicial record, argued that Davis's crimes were, "by definition . . . committed on occasions different from one another." In the government's view, "it would have been logically possible for [Davis] to cease selling cocaine after one sale without engaging in another because they happened on different dates."

The district court sided with the government, ruling that Davis's drug-trafficking crimes occurred on different occasions. The court found it dispositive that Davis had "time to think and

reconsider his criminal conduct." Instead, the court opined, Davis "made a conscious, deliberate . . . , economic decision to sell the dope separately on each occasion." Accordingly, the district court found that Davis was indeed an armed career criminal and sentenced him to 180 months' imprisonment. This appeal ensued.

## II.

The Armed Career Criminal Act of 1984 enhances punishment for recidivists who violate the federal felon-in-possession statute. *See United States v. Barbour*, 750 F.3d 535, 539 (6th Cir. 2014). Under the Act, any defendant who violates 18 U.S.C. § 922(g) and has at least three previous convictions for a "violent felony" or "serious drug offense" is subject to a mandatory minimum 180-month sentence. 18 U.S.C. § 924(e)(1). These predicate convictions must have been "committed on occasions different from one another." *Id.*

Davis first suggests that the Fifth and Sixth Amendments required the prosecution to submit his predicate convictions to a jury and prove them beyond a reasonable doubt. This argument fails. As the Supreme Court recently reiterated, "the fact of a prior conviction" falls within a "narrow exception" to the general rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Alleyene v. United States*, 133 S. Ct. 2151, 2160 n.1 (2013).

Next, Davis disputes his designation as an armed career criminal on the basis of the Act's "different occasions" clause. He tells us that his predicate felony drug convictions were all part of one continuous "criminal spree" because they occurred over the course of "[14] days," involved "sales to the same person," and were charged "under a single indictment."

Did Davis sell cocaine on four different occasions? Our review of this question is de novo. *United States v. Jenkins*, 770 F.3d 507, 509 (6th Cir. 2014). To answer it, we consider the "context" and "circumstances" of the underlying crimes. *Id.* For example, is it possible to

isolate "the point at which [Davis's] first offense [was] completed" and the "the second offense beg[an]"? *See United States v. Hill*, 440 F.3d 292, 297 (6th Cir. 2006). Or was it possible for Davis to have "cease[d] his criminal conduct after the first offense" and "withdraw[n] without committing the second"? *See id.* If so, Davis's criminal episodes were likely "distinct in time." *See United States v. Brady*, 988 F.2d 664, 668 (6th Cir. 1993) (en banc) (quoting *United States v. Hughes*, 924 F.2d 1354, 1361 (6th Cir. 1991)).

The district court sensibly concluded that Davis had previously committed at least three serious drug offenses on different occasions. Here, Davis sold a half-gram of cocaine on four discrete dates. The first transaction was completed on September 22, 2009. At this juncture, Davis had a chance to hang up his hat. *See Hill*, 440 F.3d at 297. But instead, per his counsel's admission at the sentencing hearing, Davis's thinking was "I've still got this extra dope [and] I need to get rid of it." Two days later, Davis made another sale. Five days later, he was back at it again. And another six days after that, Davis made his final drug deal. As the district court correctly recognized, Davis made a "conscious," "deliberate," "economic decision to sell [cocaine] separately on each occasion." Accordingly, Davis's offenses clearly fall within the "outer reaches" of the Act "as Congress intended." *See Brady*, 988 F.2d at 673–74 (Jones, J., dissenting) (noting that "simultaneous acts should be treated as one conviction," but "there need not be an intervening conviction between offenses").

What is more, Davis's argument is (in his trial counsel's words) "frivolous" under our precedents. For example, in *United States v. Roach*, 958 F.2d 679 (6th Cir. 1992), the defendant argued that his Tennessee state convictions for the sale and possession of Quaaludes were part of a "single criminal episode" because "the convictions occurred on the same date," "stemmed from the same indictment," and "resulted from the sale to the same undercover agent." *Id.* at 683. We

rejected that argument outright. Highlighting the timeline, we applied the different occasions clause to hold that drug-trafficking offenses committed "on three different days (March 11th, 12th, and 26th) . . . d[id] not constitute a single criminal episode." *Id.* at 684. The same goes for Davis's cocaine sales. *See, e.g.*, *United States v. Banner*, 518 F. App'x 404, 406 (6th Cir. 2013) (per curiam); *United States v. Bailey*, 264 F. App'x 480, 482–83 (6th Cir. 2008); *United States v. White*, No. 05-6737, 2007 WL 1217960, at *3 (6th Cir. Apr. 25, 2007).

Davis's rejoinders do not change this result. We have recognized that the different occasions clause may be satisfied even where offenses were proximate in time, *e.g.*, *Jenkins*, 770 F.3d at 510, the drugs were sold to the same person, *e.g.*, *Roach*, 958 F.2d at 683, no intervening arrest or conviction occurred, *e.g.*, *Brady*, 988 F.2d at 666–67, counts of the indictment were charged together, *e.g.*, *United States v. Martin*, 526 F.3d 926, 940 (6th Cir. 2008), and concurrent sentences were imposed, *e.g.*, *United States v. Anderson*, 76 F.3d 685, 691 (6th Cir. 1996). None of these factors are dispositive in this case.

Davis also argues, based on the Supreme Court's recent decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), that the statutory phrase "committed on occasions different from one another" runs afoul of the Constitution's prohibition of vague criminal laws. Because Davis did not raise this argument below, we apply plain-error review. *See* Fed. R. Crim. P. 52(b); *United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (en banc).

The Fifth Amendment requires that penal laws, including sentencing provisions, "state with sufficient clarity the consequences of violating a given criminal statute." *United States v. Batchelder*, 442 U.S. 114, 123 (1979). A criminal statute "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement" violates due process. *Johnson*, 135 S. Ct. at 2556. As the Supreme Court has said,

however, "[w]ords inevitably contain germs of uncertainty." *Broadrick v. Oklahoma*, 413 U.S. 601, 608 (1973). Statutory language need "not satisfy those intent on finding fault at any cost"; rather, it must be "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with." *U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 579, (1973).

Davis's contention seems to be that the different occasions clause is unconstitutionally vague because, according to his understanding, the term "occasion" might also refer to the "character" of the predicate offense. We are not convinced that the Act is "hopeless[ly] indetermina[te]" in this respect. *See Johnson*, 135 S. Ct. at 2558. At worst, the term is simply left undefined by the statute. *Barbour*, 750 F.3d at 539. But common sense and the Act's legislative history make abundantly clear that the term "occasion" refers to "the course of time." *See* 134 Cong. Rec. S17360–02 (daily ed. Nov. 10, 1988) (statement of Sen. Biden). Further, we have long held that the Act "enhance[s] punishment for multiple criminal episodes that were distinct in time," *Hughes*, 924 F.2d at 1361, thus "providing ample notice to the citizenry of the consequences of such crimes," *Jenkins*, 770 F.3d at 510.

Absent more, we cannot say that Davis has shown error "so plain that the trial judge . . . [was] derelict in countenancing it." *See United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006) (quoting *United States v. Carroll*, 26 F.3d 1380, 1383 (6th Cir. 1994)).

III.

The district court's sentencing decision is affirmed.